CASE 13—TORT—DECEMBER 13.

# Hundley v. Louisville & Nashville Railroad Co.

### APPEAL FROM MARION CIRCUIT COURT.

ACTION FOR CONSPIRACY TO BLACKLIST.—It is an actionable wrong for a railroad company in discharging an employe to enter upon its records a false statement of the reason for such discharge (where the discharging company has made an agreement with other company) that no person discharged will be employed by any of the parties to such an agreement; but in such an action a petition is fatally defective which fails to allege that the plaintiff had applied for employment to other railroad companies and had been refused on account of such wrongful act.

H. P. COOPER, FOR APPELLANT. (Brief withdrawn.)

EDWARD W. HINES, FOR APPELLEE.

1. The petition does not state a cause of action for wrongful discharge because it is not alleged that there was any contract of employment, or that plaintiff ever made any effort to get other employment.

2. The petition is defective in failing to allege any fact showing that plaintiff was injured by the alleged conspiracy.

3. Employers engaged in a public service and owing a duty to the public to employ only faithful and competent servants may combine and refuse to employ any person who has already been tried by some member of the association and found unfaithful or incompetent. (Brewster v. Miller's Sons, &c., 19 Ky. Law Rep., 593; Schulten v. Bavarian Brewing Co., 96 Ky., 224; Delz v. Winfree, 80 Texas, 400; Mo. Pac. R. R. Co. v. Richmond, 38 Am. & Eng. Ry. Cases, 241.)

4. An act lawful in itself does not become actionable solely because it was done maliciously. Chambers & Marshall v. Baldwin, 91 Ky., 121; Bourlier Brothers v. Macauley, 91 Ky., 135.

LISLE & McCHORD, (H. W. BRUCE AND W. C. McCHORD, OF COUNSEL) ALSO FOR APPELLEE.

The discharge of appellant from the employ of the appellee

was *damnum absque injuria.* Broom's Legal Maxims, p. 195; Craig v. Trustees, etc., Sneed, 155.

EDWARD W. HINES, FOR APPELLEE' IN A PETITION FOR A MODIFI-CATION OF THE OPINION.

It is not an actionable wrong to procure one to break a contract with a third person. Chambers & Marshall v. Baldwin, 91 Ky., 121; Bourlier Bros. v. Macauley, 91 Ky., 135. And so to persuade one not to make such contract.

JUDGE PAYNTER DELIVERED THE OPINION OF THE COURT.

It is averred in the petition as amended that the plaintiff has no trade or calling except railroading; that for the past five years he has been in the employment of the defendant; that while engaged in the discharge of his duties he was wrongfully, unlawfully, and maliciously discharged by it; that it wrongfully, unlawfully, and maliciously blacklisted him; that he was blacklisted wrongfully, unlawfully, maliciously, and falsely by its placing upon its records a pretended cause of discharge, to wit, neglect of duty, with a view of injuring and preventing him from entering its employment or that of other railroad companies; that it had entered into a conspiracy and combination with other railroad companies by which its employes discharged for cause will not be given employment by other railroad companies; that, on account of its false and malicious acts and its conspiracy with other railroad companies, he has been deprived of the right to again engage in the employment of the defendant or other railroad companies; that the wrongful acts mentioned were committed for the purpose of making, and had made it impossible for him to ever again get employment from the defendant on any of its lines, or from other railroad companies in the United

States; and that he has been damaged thereby in the sum of $5,000.

Our attention has not been invited to, nor have we been able to find, any reported case involving exactly the same question as is involved in this case.   It is a novel question to this court, although there are reported cases of other courts the doctrine of which might be applied to this case. As the population of the country increases, as the business and commercial industries multiply, as inventive genius causes the civilized peoples of the world to marvel at its discoveries and productions, as space is annihilated by the means of rapid transit for man, commerce, thought, and sound, thus facilitating the conduct of the business, the pursuit of occupations and callings, and the promotion of the social and political intercourse of the world, courts are called upon to apply familiar principles to new questions; if none seem to be applicable, to enunciate a just rule, suited to the state of facts before it and for future application to similar facts.   It can never be said that the novelty of a complaint is an objection to the action.   The familiar maxim of the law, *"Ubi jus, ibi remedium,"* is considered valuable by all courts.   It was this maxim which caused the invention of the form of action called an "action on the case."   It is the part of every man's civil rights to enter into any lawful business, and to assume business relations with any person who is capable of making a contract.   It is likewise a part of such rights to refuse to enter into business relations, whether such refusal be the result of reason, or of whim, caprice, prejudice, or malice.   If he is wrongfully deprived of these rights, he is entitled to redress. Every person *sui juris* is entitled to pursue any lawful

Hundley v. Louisville & Nashville Railroad Co.

trade, occupation, or calling. It is part of his civil rights to do so. He is as much entitled to pursue his trade, occupation, or calling, and be protected in it, as is the citizen in his life, liberty, and property. Whoever wrongfully prevents him from doing so inflicts an actionable injury. For every injury suffered by reason of a violent or malicious act done to a man's occupation, profession, or way of getting a livelihood, an action lies. Such an act is an invasion of legal rights. A man's trade, occupation, or profession may be injured to such an extent, by reason of a violent or malicious act, as would prevent him from making a livelihood. One who has followed a certain trade or calling for years may be almost unfitted for any other business. To deprive him of his trade or calling is to condemn, not only him, but perchance a wife and children, to penury and want. Public interests, humanity, and individual rights, alike, demand the redress of a wrong which is followed by such lamentable consequences. A railroad company has the right to engage in its service whomsoever it pleases, and, as part of its rights to conduct its business, is the right to discharge any one from its service, unless to do so would be in violation of contractual relations with the employe. It is the duty of a railroad company to keep in its service persons who are capable of discharging their important duties in a careful and skillful manner. The public interest, as well as the vast property interests of the company, require that none other should be employed by it. Its duty in this regard and its right to discharge an employe does not imply the right to be guilty of a violent or malicious act, which results in the injury of the discharged employe's calling. The company has the right to keep a record of the causes for which it discharges an employe, but in the exercise of this right

the duty is imposed to make a truthful statement of the cause of the discharge. If, by an arrangement among the railroad companies of the country, a record is to be kept by them of the causes of the discharge of their employes, and when they are discharged for certain causes the others will not employ them, it becomes important that the record kept should contain a true statement of the cause of an employe's discharge. A false entry on the record may utterly destroy and prevent him from making a livelihood at his chosen business. Such false entry must be regarded as intended to injure the discharged employe; therefore a malicious act. If it is the custom of the railroads of the country to keep such record, and that employes discharged for certain causes are not to be employed by them, then it enters into, and forms part of, every contract of employment that neither a false entry shall be made, nor one so made communicated, directly or indirectly, to any other railroad company. Suppose it was the custom of the railroads, when an employe was discharged without cause, to give him a card or statement to that effect, and if he did not have such card or statement he could not get employment with other railroad companies, then that custom would enter into every contract of employment; and if a company wrongfully refused to give it to the discharged employe, and in consequence of which refusal he was injured, a cause of action would lie for the damages sustained. For such breach of duty the employe could maintain an action *ex contractu* or *ex delicto*, at his option. Addison on Torts (vol. 1, 17), says: "A tort may be dependent upon, or independent of, contract. If a contract imposes a legal duty upon a person, the neglect of that duty is a tort founded on contract; so that an action *ex contractu* for the breach of contract, or an

action *ex delicto* for the breach of duty, may be brought, at the option of the plaintiff." It was one of the purposes of the common law to protect every person against the wrongful acts of every other person, and it did not matter whether they were committed by one person or by a combination of persons, and under it an action was maintainable for injuries done by disturbing a person in the enjoyment of any right or privilege which he had. It is said by Cooley on Torts, 278: "Thus, if one is prevented, by the wrongful act of a third party, from securing some employment he has sought, he suffers a legal wrong, provided he can show that the failure to employ him was the direct and natural consequences of the wrongful act." It is said by Addison on Torts (vol. 1, 14). "When a violent or malicious act is done to a man's occupation, profession, or way of getting a livelihood, there an action lies in all cases." The plaintiff does not seek to recover because he was discharged in violation of a contract which he had with the defendant. He does not allege that he had a contract with it to perform services for it for a given length of time. He seeks to recover damages for its alleged wrongful act in making the false entry upon its record against him, to prevent him from pursuing his calling by rendering it impossible for him to get employment from other railroad companies.

The petition does not state a cause of action against the defendant. The averments that he had been deprived of the "right" to again engage in the employment of other railroad companies, and that the alleged wrongful act had made it impossible for him to ever again get employment with other railroad companies, are mere conclusions of the pleader from the facts alleged. *It should have been averred that he had sought, and been refused, employment*

*by reason of the alleged wrongful act. An agreement made with other railroad companies not to employ defendant's discharged employes does not injure the plaintiff unless carried out.* An averment that the defendant conspired and combined with other railroad companies to do an act, if unlawful, would not obviate the necessity of making the averment that he had sought and been refused employment by reason of the alleged wrongful act. Injury is the gist of the action. The liability is damages for doing, not conspiracy. The charge of conspiracy does not change the nature of the act. In an action for damages, there must be some overt act, consequent upon the agreement to do a wrong, to give the plaintiff a standing in a court of law. Jaggard on Torts, 638; Cooley on Torts, 279. For the reasons given the judgment sustaining a demurrer to the petition is affirmed.