WILLIAM F. McDONALD

*v.*

THE ILLINOIS CENTRAL RAILROAD COMPANY *et al.*

*Opinion filed October 19, 1900.*

1. PLEADING—*if averment is equivocal the most unfavorable meaning must be adopted.* An averment that the defendant railroad companies agreed, after the A. R. U. strike of 1894, to furnish each other with information as to employees who left their service during such strike, "and that such employees of any and all said companies would not be employed by any of said companies without a release and consent from the railway company by which any such employee was last employed, *such release and consent being commonly called by railroad men a 'clearance,'*" does not charge that the consent of the company last employing a man should be essential to his employment by another company, but only that such ex-employee should not be employed unless he could produce a "clearance."

2. SAME—*when declaration does not charge breach of duty by railroad company to ex-employee.* A declaration charging that the defendant railroad company ʈefused to give the plaintiff, an ex-employee, such a clearance as would "enable him to obtain employment in the railroad business," does not charge a breach of duty where it is not alleged that the company refused to give him any clearance whatever or a clearance setting forth truthfully all the facts proper to be stated therein.

MAGRUDER, J., dissenting.

*McDonald* v. *Illinois Central Railroad Co.* 83 Ill. App. 463, affirmed.

WRIT OF ERROR to the Appellate Court for the First District;—heard in that court on writ of error to the Circuit Court of Cook county; the Hon. GEORGE W. BROWN, Judge, presiding.

The circuit court of Cook county sustained a demurrer to a declaration filed herein by plaintiff in error August 7, 1896. Under an order granting leave to file an amended declaration, plaintiff in error, on the 15th day of January, 1898, filed the following declaration:

"William F. McDonald, plaintiff, by William J. Strong, his attorney, for his amended declaration, by leave of court, complains of the Illinois Central Railroad Com-

187—34

pany (a corporation) and the Chicago and Northwestern Railway Company (a corporation) of a plea of trespass on the case:

"For that whereas, heretofore, to-wit, on the 26th day of June, 1894, the plaintiff was and still is a citizen of the State of Illinois, living in the city of Chicago, county of Cook, in said State, and was by occupation a skilled railroad man, and had for about five years theretofore been employed by the defendant the Illinois Central Railroad Company as a switchman and conductor, and the plaintiff was and still is, by reason of his long experience, skill and good habits, a safe and competent railroad operator, well qualified for and adapted to follow the lucrative calling of switchman and conductor.

"And plaintiff further avers that prior to the 6th day of August, 1894, and up to and including, to-wit, the 26th day of June, 1894, he was in the employ of the defendant the Illinois Central Railroad Company as a switchman and conductor, which said employment was a lucrative and profitable one for the plaintiff, and which he, by reason of his long experience and by reason of qualifications which he possessed, had reason and cause to believe would continue to be one of great gain and profit to him; that on or about the 26th day of June, 1894, he voluntarily left the service of the defendant the Illinois Central Railroad Company.

"Plaintiff further states that before the said 6th day of August, 1894, and before the acts complained of herein, the defendants entered into a conspiracy, agreement and understanding with certain other railroad companies having lines of railway running into the said city of Chicago, (to-wit, all the railroad companies having lines running into said city of Chicago,) namely: the Atchison, Topeka and Santa Fe; the Baltimore and Ohio; Chicago and Erie; Chicago and Grand Trunk; Chicago and Western Indiana; Chicago, Burlington and Quincy; Chicago Great Western; Chicago, Milwaukee and St. Paul;

Chicago, Rock Island and Pacific; Cleveland, Cincinnati, Chicago and St. Louis; Lake Shore and Michigan Southern; Louisville, New Albany and Chicago; Michigan Central; New York, Chicago and St. Louis; Pennsylvania; Wisconsin Central; Wabash; Union Stock Yard and Transit Company; Calumet and Blue Island; Belt Railway Company; Pittsburg, Cincinnati, Chicago and St. Louis; Pittsburg, Ft. Wayne and Chicago; Chicago and Eastern Illinois, and Chicago and Southwestern Railway Company; that they, the said railroad companies, would furnish, each to the other, information as to all their employees who had committed offenses or who were charged with having committed offenses, and also as to all their employees who had left their service during the strike which commenced on or about June 26, 1894, and ended on or about August 6, 1894, commonly known as the A. R. U. or American Railway Union strike, and as to all their employees who were members of the A. R. U. or American Railway Union, and that such employees of any and all said companies would not be employed by any of said companies without a release and consent from the railway company by which any such employee was last employed, such release and consent being commonly called by railroad men a 'clearance,'—which said conspiracy and agreement, so entered into as aforesaid, was a conspiracy and agreement to blacklist and boycott such employees, the object and purpose of which conspiracy and agreement was to maliciously and wantonly interfere with such employees who had so previously terminated their employment with or been discharged from the employment of either of said railroad companies, in and about obtaining employment with any other of said railroad companies in the city of Chicago.

"Plaintiff further alleges that said conspiracy and agreement, so entered into between the railroad companies having lines running into Chicago, was, prior to the commencement of this action, entered into by all

the railroad companies operating railroads in the United States, which said conspiracy and agreement is still in force among the railroad companies having lines of railway running into the city of Chicago, aforesaid, as well as all other railway companies operating railroads in the United States, including the Toledo and Ohio Central Railroad Company, hereinafter mentioned. Plaintiff says that he left the service of the defendant the Illinois Central Railroad Company during the strike commonly known as the A. R. U. or American Railway Union strike, which began on or about the 26th day of June, 1894, and ended on or about the 6th day of August, 1894, and after he so left the employment of the defendant the Illinois Central Railroad Company, and before the commencement of this suit, the said defendant the Illinois Central Railroad Company did willfully and maliciously, and in pursuance of said conspiracy, agreement and understanding above set forth, and with the intent willfully and maliciously to prevent plaintiff from securing employment, refuse to give plaintiff such release and consent as would enable him to obtain employment in the railroad business, and with the intent willfully and maliciously to interfere with the plaintiff in his endeavor to secure employment in the railroad business and to prevent him from securing such employment, cause to be made known to said other railroad companies, including the Toledo and Ohio Central Railroad Company, that he, the plaintiff, had quit the service of it, the said defendant the Illinois Central Railroad Company, during said A. R. U. strike; that such information aforesaid, so made known by the defendant the Illinois Central Railroad Company, was given and made known by the defendant the Illinois Central Railroad Company to said other railroad companies with the willful and malicious intent of preventing the plaintiff from securing employment in the railroad business, for which he was well qualified, and the defendant the Illinois Central Railroad Company thereby

requested the enforcement of said above described pre-concerted conspiracy and agreement so entered into with said various other railroad companies that said various other railroad companies should not employ the plaintiff in any branch of their service for which he, the plaintiff, was well qualified, without the plaintiff first obtained the consent of the said defendant the Illinois Central Railroad Company, which consent the defendant the Illinois Central Railroad Company (though requested by the plaintiff so to do) refused and still refuses to give; and the plaintiff says that in consequence thereof, and for no other cause or causes, he has been denied the right of engaging in his usual occupation as a skilled railroad man, and has been denied employment by the defendant the Chicago and Northwestern Railway Company and by the Toledo and Ohio Central Railroad Company, which railroad companies were parties to said conspiracy, and to which railroad companies he has applied for employment since leaving the service of the Illinois Central Railroad Company and before the commencement of this suit, and was discharged from the employment of the defendant the Chicago and Northwestern Railway Company and the Toledo and Ohio Central Railroad Company, from which companies he had secured employment after leaving the service of the Illinois Central Railroad Company, and before the commencement of this suit, and thereupon and thereby the plaintiff was denied employment by said Chicago and Northwestern Railway Company and by said Toledo and Ohio Central Railroad Company, and though he has assiduously applied for work to a great number of railroad companies in the United States, to-wit, all the railroad companies in the United States operating railroads, he has, by reason of the willful and malicious conduct and agreement of the defendants and other railroad companies heretofore set forth, and for no other cause or causes, been denied the right of contracting for and obtaining employment with any of said railroad com-

panies, and has been prevented from obtaining employment, and has been prevented from supporting himself by his trade and occupation and by his free labor, and prevented from supporting those dependent upon him for the necessaries of life, and has suffered great mental anguish, and has lost divers great gains and profits which he might and would otherwise have acquired, and is otherwise damaged and injured by the said willful, malicious and illegal acts of the defendants.

"And the plaintiff says that the defendants have, from the 6th day of August, 1894, hitherto continued this willful, malicious and illegal interference with this plaintiff in and about procuring employment, and that he is now prevented thereby from obtaining employment, as aforesaid, and has lost great emoluments and profits which he might and otherwise would have acquired from his trade and occupation as a skilled railroad man, and the plaintiff, being inexperienced in other kinds of labor, cannot obtain employment except that of a lower class or degree, and not as profitable to the plaintiff as employment in his trade and occupation as a skilled railroad man, to his damage in the sum of $50,000," etc.

The court sustained a general demurrer to this declaration. The plaintiff in error abided his pleading, and judgment was entered accordingly. The record was brought into the Appellate Court for the First District by writ of error, and the judgment of the circuit court was there affirmed. This is a writ of error to bring the record into review in this court.

William J. Strong, for plaintiff in error.

Sidney F. Andrews, (James Fentress, of counsel,) for defendant in error the Illinois Central Railroad Co.

E. E. Osborn, (A. W. Pulver, and Lloyd W. Bowers, of counsel,) for defendant in error the Chicago and Northwestern Railway Co.

Mr. CHIEF JUSTICE BOGGS delivered the opinion of the court:

Counsel for plaintiff in error, in support of his insistence the circuit court erred in holding the declaration did not state a cause of action, says: "The question presented by the declaration and demurrer (when shorn of legal phraseology) is simply this: Is it lawful for all the employers in any line of industry to combine and agree that they will not hire any of each other's employees who have left the service of any one of them, unless the employer whose service he has left gives his consent that such employee may be employed? Or, to put it in another form: Is it lawful for all the employers in any line of industry to combine and conspire together to punish a man who leaves their service during a strike by refusing him employment, and thus preventing him from securing employment at his trade, unless his former master emancipates him by giving his consent to his employment?"

We do not think the question in either of its forms was presented to the trial judge by the pleadings. The allegation of the declaration is, "said defendant railroad companies" (defendants in error and other railroad corporations named therein) "entered into a conspiracy, agreement and understanding that they, the said railroad companies, would furnish each to the other information as to all their employees who had committed offenses or who were charged with having committed offenses, and also as to all their employees who had left their service during the strike which commenced on or about June 26, 1894, and ended on or about August 6, 1894, commonly known as the A. R. U. or American Railway Union strike, and as to all their employees who were members of the A. R. U. or American Railway Union, and that such employees of any and all said companies would not be employed by any of said companies without a release and consent from the railway company by which any such

employee was last employed, such release and consent being commonly called by railroad men a 'clearance.'" The meaning of the averment is equivocal. Counsel for plaintiff in error, ignoring a portion of the language, construes the declaration to charge that said defendant corporations agreed former employees of either company should be required to have an instrument expressing the consent of the former employer to the subsequent employment by another company. That portion of the averment, alone considered, would as well bear the other construction: that the agreement was such employee should show he had been released from his former employment or had quit with the consent of his employer. But the averment in its entirety is to be resorted to to ascertain the true meaning of the instrument denominated a "release and consent," and if two or more meanings present themselves, that which is most unfavorable to the pleader is to be adopted. (4 Ency. of Pl. & Pr. 759.) The pleader, in obedience, as we must assume, to his duty to state issuable facts, distinctly and definitely declares the "release and consent" referred to to be that which is commonly known and called among railroad employees a "clearance." The trial court then properly held the averment of the declaration to mean that the "release and consent" instrument referred to in the declaration was the ordinary clearance or clearance card in common use among railroad corporations and their employees.

This court, in *Cleveland, Cincinnati, Chicago and St. Louis Railway Co.* v. *Jenkins,* 174 Ill. 398, speaking of the instrument known as and called in railroad circles a "clearance" or "clearance card," said (p. 401): "A distinction is to be made between what is known, in terms, as a clearance card and a letter of recommendation. This distinction is apparent, not only from the evidence in this case, but also from the knowledge which courts have of the general conduct and management of railroad business and affairs. It is the duty of courts to take, and

they will take, judicial notice of the general business affairs of life, and of the manner in which ordinary railroad business is conducted, and of the every-day practical operation of them. (*Slater* v. *Jewett,* 5 Am. & Eng. Ry. Cas. 515; *Smith* v. *Potter,* 2 id. 140.) From the evidence produced on this question, and from this judicial notice which we take of the ordinary general management of railroads, it is apparent that what is known as a clearance card is simply a letter,—be it good, bad or indifferent,—given to an employee at the time of his discharge or end of service, showing the cause of such discharge or voluntary quittance, the length of time of service, his capacity, and such other facts as would give to those concerned information of his former employment. Such a card is in no sense a letter of recommendation, and in many cases might, and probably would, be of a form and character which the holder would hesitate and decline to present to any person to whom he was making application for employment. A letter of recommendation, on the contrary, is, as the term implies, a letter commending the former services of the holder, and speaking of him in such terms as would tend to bring such services to the favorable notice of those to whom he might apply for employment."

Under every rule of construction of pleadings there is no issuable averment the companies defendant agreed the consent of either should be essential to the employment by the other of such companies of a discharged employee, but only that an employee who had voluntarily quit the employ of either of the companies during the strike should not be employed by the other unless he could produce the "clearance" or "clearance card" in common use among railroad circles, and commonly called by railroad men a "clearance." The declaration, by its own language, explains that the instrument of "release or consent" referred to by the pleader is simply that known and commonly called a "clearance" among railroad men.

It is not averred the defendant companies, (defendants in error here,) or any of the corporations named in the declaration, agreed or had an understanding that employees who had joined in the strike mentioned in the declaration should not be granted "clearance cards." On the contrary, the inference deducible from all that is said on the point in the declaration is, that the railroad companies continued to grant clearances after the strike as before, and that plaintiff in error applied to defendant in error the Illinois Central Railroad Company for a "clearance card." The declaration does not charge said defendant company refused to grant him a "clearance card" or a "clearance" setting forth truthfully all facts proper to be stated in a "clearance card," but the language of the declaration is, said company refused to give him such an instrument as would "enable him to obtain employment in the railroad business." In what respect the release and consent or clearance which it is plainly inferred the company was willing to give the plaintiff was insufficient to enable him to procure employment from other railroad corporations is not disclosed. The declaration does not charge the Illinois Central Railroad Company refused to state fully and fairly all facts proper to be inserted in such an instrument, or that it inserted or desired to insert in the clearance any statement that was false or injurious to him or that had no proper place in his clearance paper. The company was not required to give him a clearance that would enable him to get employment from other companies operating railroads. As we said in the *Jenkins case, supra:* "Such a card is in no sense a letter of recommendation, and in many cases might, and probably would, be of a form and character which the holder would hesitate and decline to present to any person to whom he was making application for employment."

Whether the charge included in the question formulated by counsel for the plaintiff in error would constitute

a cause of action was not presented to the trial court by the declaration, and we agree with the view entertained by the trial court that the declaration failed to state a cause of action.

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*

Mr. Justice Magruder, dissenting.