BOYER et al. v. WESTERN UNION TEL. CO.

(Circuit Court, E. D. Missouri, E. D.   August 17, 1903.)

No. 4,851.

1. MASTER AND SERVANT—RIGHT OF DISCHARGE.

In the absence of a contract for employment for a definite time, an employer has the right to discharge his employé without notice at any time.

2. SAME—CONSPIRACY TO DESTROY LABOR UNION.

As, in the absence of contract for employment for a definite period, the employer may discharge his employés at any time, for any reason, or for no reason, there can be no such thing as an unlawful conspiracy to destroy a labor union by discharging its members or refusing to employ them.

3. SAME—BILL FOR INJUNCTION—CONCLUSIONS OF LAW.

An allegation, in a bill by members of a labor union for an injunction, that defendant, its officers and agents, have unlawfully combined and confederated together to destroy the union, and by threats, intimidation, and coercion, and otherwise, are interfering with plaintiffs and with others of their employés for uniting with the union, and are seeking to prevent those discharged from obtaining employment, contains only conclusions of law.

4. SAME—BREACH OF CONTRACT OF EMPLOYMENT—EQUITABLE RELIEF.

The remedy for a discharge from employment is at law for breach of contract, and not in equity to enjoin the discharge.

5. SAME—RIGHT TO BLACKLIST.

An employer, having discharged employés for belonging to a labor union, has the right to keep a book containing their names and showing the reason of their discharge, and to invite inspection thereof by other employers, even though the latter, therefore, refuse to hire the discharged employés.

In Equity.

E. Douglas Andrews, for complainants.

Dickson, Smith & Dickson, for defendant.

ROGERS, District Judge.   The plaintiffs named in the bill, for themselves and for others whom they describe as the "remaining members of Local Lodge No. 3, of St. Louis, of the Commercial Telegraphers' Union of America," filed this bill in equity and ask for an injunction.   Its prayer is as follows:

"Forasmuch, therefore, as your orators have no adequate remedy in the premises except in equity, and to that end that the defendant, the Western Union Telegraph Company, may, if it can, show why your orators should not have the relief hereby prayed, and may, according to its best knowledge, information, and belief, be required to make full, true, direct, and satisfactory answer to the premises and to all the several matters hereinbefore stated and charged, as fully and particularly as if severally and separately interrogated as to each and every of said matters, but not under oath, the answer under oath being hereby expressly waived; that said defendant may be required to produce before the court on the hearing of this cause all papers, orders, and correspondence to and from said defendant and its officers and agents, or any of them, or either of them, to the other, or within their possession or control, or the possession or control of any of them, relating to any of the matters hereinbefore alleged, or leading up to the same, for 12 months last past, making full and explicit discovery and disclosure of all the matters aforesaid,

¶ 1. See Master and Servant, vol. 34, Cent. Dig. § 19.

according to the best and utmost of their knowledge, remembrance, and information, and belief; that the hearing may be upon and touching matters of this bill of complaint alleged and charged; and that the said defendant, the Western Union Telegraph Company, its officers and agents, L. N. Boone, R. H. Bohle, and G. J. Frankel, individually and as representatives of said defendant, together with their representatives, clerks, agents, and all others who may be aiding and abetting them or either of them, may be restrained and prohibited by the order and injunction of this honorable court from discharging said employés without sufficient cause, and from in any manner coercing, persuading, inducing, or otherwise directly or indirectly preventing any of defendant's employés or other persons from joining and becoming members of said Commercial Telegraphers' Union of America, and from placing the names of your orators, or any of said persons belonging to Local Lodge No. 3 of the Commercial Telegraphers' Union of America, upon said blacklist, and from maintaining said blacklist, and from in any manner interfering, directly or indirectly, with your orators or either of them, or any of said other persons hereinbefore mentioned, from obtaining employment as telegraph operators in the city of St. Louis or elsewhere, and from ordering, coercing, persuading, inducing, or influencing, directly or indirectly, any of defendant's employés or other persons from becoming members of the Commercial Telegraphers' Union of America until the further order of this court, and that upon such final hearing of this cause said order and injunction may be made perpetual, and your orators may have such other and further relief in the premises as equity may require or may seem proper, and for costs."

A careful examination of the bill shows that the gist of it is this: That the defendant, having become aware that plaintiffs had become members of an organization known as the Commercial Telegraphers' Union of America, immediately discharged them, without notice or other cause; that "the defendant, its officers and agents, have unlawfully combined and confederated together to destroy the said union, and intend discharging all the members of said Union from the services of the defendant, * * * and by threats, intimidation, and coercion, and otherwise, are interfering with your orators and with others of their employés for uniting with the Commercial Telegraphers' Union of America, and are seeking to prevent those discharged from obtaining employment as telegraph operators"; that defendant "has established and maintained what is commonly known as a 'blacklist.' It is a list of persons who have been in their employ and who have been discharged by the defendant, on which are placed from time to time the names of persons incurring the displeasure of the defendant company, and its officers and chief operators; and the defendant, by methods which are not fully known to your orators, and which cannot be fully set forth herein, prevents persons whose names are on said blacklist from again obtaining employment as telegraph operators; that your orators' names have been placed on said blacklist solely because they have become members of the Commercial Telegraphers' Union of America, and it is the intention of the defendant * * * for the same reason to discharge from the employ and place upon said blacklist the names of several hundred other persons who are members of the Local Lodge No. 3 of the Commercial Telegraphers' Union of America, and thereby debar these your orators and said other persons * * * from obtaining employment at their respective locations as telegraph operators," etc.

The first cause of complaint is that plaintiffs have been discharged without notice from the service of the defendant for no other cause

than that they joined that union. But the answer to that complaint is that in a free country like ours every employé, in the absence of contractual relations binding him to work for his employer a given length of time, has the legal right to quit the service of his employer without notice, and either with or without cause, at any time; and in the absence of such contractual relations any employer may legally discharge his employé, with or without notice, at any time.

The second ground for complaint is that defendant, its officers and agents, have unlawfully combined and confederated together to destroy the said union, and intend discharging all the members of said union from the service of the defendant, and by threats, intimidation, and .coercion, and otherwise, are interfering with the plaintiffs and with others of their employés for uniting with the union, and are seeking to prevent those discharged from obtaining employment. I need not take time to multiply authorities to show that there is no such thing in law as a conspiracy to do a lawful thing. If the last allegation means anything, it is that the defendant, its officers and agents, have conspired to destroy the union by discharging all its members in its employ, and refusing to employ others, solely for the reason that they were members of the union. But it is not unlawful, in the absence of contractual relations to the contrary, to discharge them for that or any other reason, or for no reason at all. Hence there is no such thing in law as a conspiracy to do that, and it matters not whether you call such an agreement a conspiracy, a combination, or a confederation.

But it is said that the defendants "by threats of intimidation and coercion, and otherwise, so interfered with plaintiffs and others of its employés because they united with said union. But it does not appear what the threats were, what the intimidation was, or what the coercion was, of which they complain. Such an allegation is not one of fact; it is one of conclusion. What did defendant threaten to do? Perhaps it was to discharge them, or perhaps, if not employed by it already, to not employ them. But such a threat is not illegal. It is not illegal to threaten to do a lawful thing. It may be defendant threatened to employ nonunion men, instead of members of the union; but that, if true, is not illegal. Defendant had a perfect right to employ whom it pleased, if it could. How did defendant intimidate or coerce plaintiff? The complaint gives no answer. It will not be presumed that the threats, intimidation, or coercion complained of involved illegal acts. The law never presumes wrong, or crime, or illegality; it presumes always in favor of right and legal action. In the absence of any alleged wrongful act or threat, it would presume that defendant's interference was lawful and not unlawful. True, it is alleged that defendant, its officers and agents, unlawfully combined and confederated to destroy the union. But what is unlawful is a question of law; whether a thing done is unlawful depends on what is done or threatened to be done. But what the defendant company, its officers and agents, combined or confederated to do in order to destroy the union, is the precise thing the complaint fails to show. The court must always be able to look at the facts and say that if these facts are true they are illegal; otherwise there is no ground for invoking its protective agency.

But plaintiffs say defendant, its officers and agents, are seeking to prevent those discharged from obtaining employment as telegraphers. But how are they seeking to do so; what are they doing; are they doing acts that are unlawful? If so, what are they? The complaint gives no answer. There is no allegation in the complaint that there were any contractual relations between plaintiffs and the defendant company to retain plaintiffs in the service for any given period. But if there were, then it must be said that it was illegal to discharge them. Yet in that event equity can give no relief; the remedy is at law for a breach of contract, and each man injured must sue separately, and in his own right, for damages sustained. It would be intolerable if a man could be compelled by a court of equity to serve another against his will, or if a man could be compelled to retain in his employ one he does not want; courts of equity exercise no such power and grant no such relief.

But it is said that defendant maintains a blacklist containing a list of names of such persons as may have incurred its displeasure and have been discharged from its service, and that, by methods not known to them, it prevents such discharged persons from getting employment as telegraph operators; that they have blacklisted people solely because they belong to the union, and that they intend to blacklist others for the same thing, etc. We have seen it is not unlawful to discharge plaintiffs because they belong to the union. Is it unlawful for defendant to keep a book showing that they were discharged because they belonged to the union? The union presumably, and especially in view of the allegations in the bill, is an honorable, reputable, and useful organization, intended to better the conditions and elevate the character of its members. Is it illegal for defendant to keep a book showing that it had discharged members of such a union solely because they belong to it? That seems to be the real essence of the bill. Is it illegal to notify others that it keeps such a book and that they can inspect it, or to inform others what such a book shows? That seems to be the ground of complaint. There can be no question about it; the positive, direct, and unequivocal allegation is that defendant keeps such a book; that plaintiffs are placed on it solely because they belong to the union, and have been discharged solely because they did belong to the union. Can a court of equity grant relief to a man who says for his cause of action that he belongs to a reputable organization, and that he has been discharged solely because he did belong to it; that his employer who discharged him keeps a book on which is placed his name, and has set opposite thereto the fact that he discharged him solely because he belonged to such organization; and that he gives that information to other persons, who refuse to employ him on that account? Suppose a man should file a bill alleging that he belonged to the Honorable and Ancient Order of Freemasons, or to the Presbyterian Church, or to the Grand Army of the Republic; that his employer had discharged him solely on that account; that he had discharged others of his employés, and intended to discharge all of them, for the same reason; that he kept a book which contained all the names of such discharged persons, and set opposite the name of each discharged person the fact that he had

been discharged solely on the ground that he belonged to such organization; and that he had given such information to others, who refused to employ such persons on that account. Is it possible a court of equity could grant relief? If so, pray, on what ground? And yet that is a perfectly parallel case to this as made by the bill.

Those who may be interested in the questions raised by the demurrer to this bill will be entertained and instructed by reading the following cases, and especially the first: Payne v. Western & Atlantic R. R. Co., 49 Am. Rep. 666; Dinah Worthington et al. v. James Waring et al., 157 Mass. 421, 32 N. E. 744, 20 L. R. A. 342, 34 Am. St. Rep. 294; Hundley v. Louisville & Nashville Railway Co., 48 S. W. 429, 88 Am. St. Rep. 298; Raymond v. Russell et al., 9 N. E. 544, 58 Am. Rep. 137; McDonald v. Ill. Central R. R., 187 Ill. 529, 58 N. E. 463; Wabash R. R. Co. v. Hannahan et al. (C. C.) 121 Fed. 563.

These cases, and the cases cited in them, discuss and cover every principle involved in this bill, although, of course, the facts are different. I have not discussed the right of the plaintiffs to bring this suit for themselves and others. The bill is without equity as to the complainants named, and it is useless, therefore, to discuss their right, under the allegations of the bill, to represent other persons. It is enough to say that there is no apt authority cited, and none found, to sustain that right.

The demurrer is sustained from want of equity in the bill.