[No. 12313.   Department Two.   June 30, 1915.]

## J. R. DICK, *Appellant*, v. NORTHERN PACIFIC RAILWAY COMPANY, *Respondent*.[1]

MASTER AND SERVANT—DISCHARGE—DAMAGES — "BLACKLISTING"— COMPLAINT—SUFFICIENCY. A complaint in an action by a discharged employee for damages through the publication and circulation of false and defamatory reasons for his discharge is insufficient to state a cause of action for blacklisting, where it fails to allege that the publication reached any person to whom plaintiff ever applied for employment or did in fact influence any one not to employ him; and the mere averment of a custom among railroads to require permission to refer to former employers of an applicant is insufficient to imply a conspiracy between railroad companies not to employ discharged employees.

SAME. An allegation in such a complaint that the plaintiff since his discharge has been seeking but has been unable to secure employment, that defendant is continuing to "blacklist" and "boycott" the plaintiff with all other railroad companies, and refused to furnish plaintiff with clearance papers, by reason whereof plaintiff has been compelled to abandon his chosen profession, is insufficient to state a cause of action, in the absence of any specific allegation of any conspiracy or acts constituting any agreement amounting to the blacklisting or boycotting of the plaintiff; such allegations being mere conclusions.

SAME—DISCHARGE—DUTY TO GIVE CHARACTER. In the absence of statute, contract, or custom, there is no duty on the part of an employer to furnish a discharged servant with a certificate of character.

SAME. The violation of the criminal statute against blacklisting, Rem. & Bal. Code, § 6565, gives rise to a civil action for damages.

LIBEL AND SLANDER—SPECIAL DAMAGES—PLEADING. In an action by a discharged servant for libel, there can be no recovery for loss of employment, failure to secure employment, or other specific loss by reason of the publication, unless alleged as special damages.

LIBEL AND SLANDER—MATTER LIBELOUS PER SE—PLEADING—SPECIAL DAMAGES. The publication of a writing discharging an employee "for intimidating company's employees" is libelous *per se*, as tending to deprive him of public confidence, and to injure him in his social and business intercourse and in the pursuit of his business

[1]Reported in 150 Pac. 8.

or occupation, within Rem. & Bal. Code, § 2424, defining criminal libel; hence it is unnecessary to allege special damages.

PLEADING—INDEFINITENESS. Objection to want of definiteness in a pleading must be taken by motion and not by demurrer.

LIBEL AND SLANDER—ACTIONS—LIMITATIONS. Since each publication constitutes a separate offense, a complaint charging the continued publication of a libel up to the time of the commencement of the action is invulnerable to a demurrer raising the bar of the statute of limitations.

Appeal from a judgment of the superior court for King county, Dykeman, J., entered March 5, 1914, upon sustaining a demurrer to the complaint, dismissing an action in tort. Reversed.

*R. B. Brown* and *Thomas R. Horner*, for appellant.

*C. H. Winders*, for respondent.

ELLIS, J.—This is an action for damages by reason of an alleged wrongful publication by the defendant of an untruthful statement of the cause of the plaintiff's discharge by the defendant from employment as locomotive engineer, and preventing the plaintiff from pursuing his chosen occupation.

In the first and second paragraphs of the amended complaint, the corporate capacity of the defendant, and the fact that the plaintiff was, on October 10, 1907, a capable locomotive engineer of good standing and reputation and in the defendant's employ, are alleged. The succeeding paragraphs are as follows:

"(3)   That on the said day the defendant railway company, through its officers and agents, with intent to injure the plaintiff, destroy his reputation and good name, and deprive him of the confidence and esteem of his fellowmen, and for the purpose of preventing him from seeking or securing other employment with said company or any other company at all, and to ruin him in his profession as locomotive engineer, caused to be printed and published, and have ever since said time continued to print, publish and circulate, and are now publishing, printing and circulating the following false,

fraudulent and defamatory instrument in writing, which is. as follows, to-wit:

" 'Discharged Eng'r Dick            Livingstone, Monta.
    " 'Mr. J. R. Dick                   Oct. 10, 1907.
        " 'Eng'r Livingstone.

" 'Dear Sir: This is to advise you that you are hereby discharged from company's services for intimidating company's employees at Whitehall on the 8th inst. while in the performance of their duties.     (Signed) Yours truly
" 'C-40                          ————— Nelson
" 'Cy-Mk-EE                          Master Mechanic.'

"(4) That the Northern Pacific Railway Company, according to its usage and custom in vogue, continuously ever since the said 10th day of October, 1907, as well as the custom and usage of every other railway in the United States, refuse to take into their employ, any person who has previously been in their employ, or in the employ of another railway company, unless said applicant makes and signs a written application therefor, which contains in substance the following provisions, to-wit:

" 'In order that said company may be fully informed as to my personal character and my qualifications for the position for which I have made application, I refer to each of my former employers, and request and authorize each of said companies for whom I have formerly worked, to give to the above named company all information they may be in possession of, whether shown by my personal record, or otherwise, as to my personal character, and also my qualifications for the position that I have herein applied for, and the reason why I was discharged or quit service, upon any inquiry that may be made of them or either of them by said Company' and that by reason of said practice and custom of inserting said clause or a similar or more stringent one in the application of all railroads a person once in the employ of a. railroad company and who has been discharged, whether for an honest or dishonest reason or purpose, can never again secure employment with the same or any other company, unless under an assumed name or make false statements in his application.

"(5) That the plaintiff has continuously ever since his discharge as aforesaid, been making diligent effort to secure employment in his chosen profession, and notwithstanding there

has been and still is a demand with all the railway companies in the United States and Canada, he has been and still is unable to secure such employment and the Northern Pacific Railway has ever since said discharge, as aforesaid, continuously and is now continuing to blacklist and boycott this plaintiff with all the railroad companies in the United States and Canada, and has at all times, and still does, refuse to furnish the plaintiff with such a clearance as will enable him to secure other employment, and by reason thereof he has been compelled to abandon his chosen profession and trade and to seek other employment for which he is not specially adapted, to the great injury of his health, happiness and comfort, and to his great humiliation and shame to his damage in the sum of $50,000."

A demurrer to this complaint on the grounds that it failed to state sufficient facts, and that the action was not commenced within the time limited by law, was sustained. The plaintiff electing to stand upon his pleading, the action was dismissed and he appealed. We designate the parties throughout as plaintiff and defendant.

If the amended complaint can be sustained as stating any cause of action, it must be either, (1) an action on the case for a wrongful interference with the plaintiff's pursuit of an occupation or vocation, in which case specific damages as resulting from the defendant's conduct must be alleged; or (2) an action for libel, in which it must appear that the letter which it is alleged was published by the defendant contained language actionable *per se*, in which case no special damages as resulting therefrom need be alleged.

I. Passing for the present the inquiry as to whether the letter contained matter libelous *per se*, we shall first inquire whether the complaint states facts sufficient to show any special damages to the plaintiff resulting from any wrongful act of the defendant.

The third paragraph, standing alone, states no cause of action for interference with plaintiff's pursuit of an occupation. While it is alleged that the letter was printed, published

and circulated with "intent" to injure the plaintiff, destroy his reputation and deprive him of confidence, and for the "purpose" of preventing him from seeking or securing employment and to ruin him in his profession, it is not alleged that these effects, or any of them, were ever actually produced by it.

It may be assumed that where there is a custom on the part of railroads to keep a record of the causes of discharge of their employees, that custom enters into and forms a part of every contract of employment, carrying the implied undertaking that no false entry will be made, or if made, that it will not be communicated to any other prospective employer. But no such custom is here pleaded, nor is there any allegation that the printing, publication or circulation of the offending letter consisted in its communication to any prospective employer, or that it did in fact reach any one to whom the plaintiff ever applied for employment, or did in fact influence any one not to employ him. A careful examination of the entire complaint reveals the fact that nowhere does it contain any averment that the alleged damages resulted from any of the acts of the defendant charged in this third paragraph of the complaint.

The plaintiff cites and chiefly relies upon the decision of the supreme court of Kentucky in *Hundley v. Louisville & Nashville R. Co.*, 105 Ky. 162, 48 S. W. 429, 88 Am. St. 298, 63 L. R. A. 289. In that case the complaint was much more definite and direct than that here in its allegations of conspiracy, falsity of record, etc., and at least implied that the record kept by the defendant was communicated to other conspiring railroads; but, like the complaint here, it failed to contain any allegation that the plaintiff was ever refused employment by reason of such false record. Holding the complaint insufficient for that reason, the court said:

"A false entry on the record may utterly destroy and prevent him from making a livelihood at his chosen business. Such false entry must be regarded as intended to injure the

discharged employee; therefore a malicious act. If it is the custom of the railroads of the country to keep such record, and that employees discharged for certain causes are not to be employed by them, then it enters into, and forms part of every contract of employment that neither a false entry shall be made, nor one so made communicated, directly or indirectly, to any other railroad company. . . .

"The petition does not state a cause of action against the defendant. The averments that he had been deprived of the 'right' to again engage in the employment of other railroad companies, and that the alleged wrongful act had made it impossible for him to ever again get employment with other railroad companies, are mere conclusions of the pleader from the facts alleged. *It should have been averred that he had sought, and been refused, employment by reason of the alleged wrongful act. An agreement made with other railroad companies not to employ defendant's discharged employes does not injure the plaintiff unless carried out.* An averment that the defendant conspired and combined with other railroad companies to do an act, if unlawful, would not obviate the necessity of making the averment that he had sought and been refused employment by reason of the alleged wrongful act. Injury is the gist of the action. The liability is damages for doing, not conspiracy. The charge of conspiracy does not change the nature of the act. In an action for damages there must be some overt act, consequent upon the agreement to do a wrong, to give the plaintiff a standing in a court of law. Jaggard on Torts, 638; Cooley on Torts, 279."

The plaintiff argues that, following this case, he has alleged in the fifth paragraph special damages resulting from the printing and publication of the letter in question. An examination of that paragraph fails to disclose any such allegation, or any reference whatever to the things alleged in the third paragraph.

In the fourth paragraph, it is alleged that it is the custom of the defendant and other railroads to refuse to take into their employ any person who has previously been in their employ or in the employ of another railroad, unless the applicant sign a written reference to, and an authorization of, former employers to answer inquiries concerning the appli-

cant, and that by reason of this custom, a person once in the employ of a railroad company who has been discharged, whether for an honest or a dishonest reason or purpose, can never again secure employment with the same or any other company, except under an assumed name or by false statements in his application. Obviously, the last part of this paragraph states mere conclusions of the pleader not warranted by the facts stated. The discharge of a person for any reason or purpose not reflecting on his character, capacity or fitness for the service would have no tendency, even if the reasons were communicated to other companies, to prevent his employment by such other companies, nor would they have any reasonable tendency to prevent a re-employment by the same company.

Aside from these conclusions, the facts alleged in the fourth paragraph are not connected by any appropriate averment with the damages laid in the fifth paragraph, nor do they in themselves constitute any invasion of the plaintiff's rights or contain anything having a necessary tendency to injure him. There is no allegation that the defendant and other companies had conspired or agreed to furnish information to each other, or that the defendant ever did in fact furnish any information to any other company concerning the plaintiff, or that the defendant and other railroad companies had ever agreed that the consent of either should be a prerequisite to the employment of its discharged employees by any other. It is not even alleged that there is any custom of railroads not to employ discharged employees of other roads. Wanting some such allegation as these, and a claim of resultant damages, the things contained in this fourth paragraph are wholly impertinent to the issue of interference with plaintiff's vocation. *McDonald v. Illinois Central R. Co.*, 187 Ill. 529, 58 N. E. 463. The mere averment of a custom to require permission to refer to former employers of an applicant carries no implication of a conspiracy between railroad companies not to employ discharged employees, nor any implication that the

defendant was accustomed to or had agreed to furnish information as to its discharged employees to other companies even upon inquiry. As said by the supreme court of Illinois in a similar case:

"The fact that the master requires certificates of recommendation from persons seeking employment is certainly no reason why he should be legally compelled to give certificates to those leaving his employment. In this case the testimony produced, showing, or tending to show, that appellant required certificates of recommendation from persons seeking employment with it, does not, in any manner, tend to establish the fact that it gave to persons leaving its employment certificates of like character." *Cleveland, C. C. & St. L. R. v. Jenkins*, 174 Ill. 398, 51 N. E. 811, 66 Am. St. 296, 62 L. R. A. 922, 926.

Passing to the fifth paragraph, we find the allegations that the plaintiff, ever since his discharge, has been seeking, but has been unable to secure, employment, and that the defendant has, and is, continuing to "blacklist" and "boycott" the plaintiff with all railroad companies in the United States and Canada, and "has at all times, and still does, refuse to furnish the plaintiff with such a clearance as will enable him to secure other employment," and by reason thereof the plaintiff has been compelled to abandon his chosen profession, etc. This is the only allegation in the whole complaint charging the defendant with any conduct which has resulted in damage to the plaintiff. This charge makes no reference to any of the acts set forth in the two preceding paragraphs as a ground of damage. The only direct charge of conduct on the defendant's part resulting in damage is found in the averment that the defendant refuses to furnish the plaintiff with such a clearance as will enable him to secure other employment.

In the absence of a statute imposing it, there is no legal duty on the part of an employer to furnish a servant discharged or leaving his service with any certificate of character. At common law, whatever moral obligation rests on

a master to give to a servant a character belongs to the imperfect class, not enforcible by law. *Carrol v. Bird*, 17 Eng. Ruling Cases 245; *Fell v. Ashburton*, 1 Faculty Collection (Scotch) *446. In the absence of contract, or of custom implying a contract, or a statute so requiring, the same rule prevails in the United States. *Cleveland, C. C. & St. L. R. Co. v. Jenkins, supra;* notes to same case, 62 L. R. A. 922; *New York, C. & St. L. R. Co. v. Schaffer*, 65 Ohio St. 414, 62 N. E. 1036, 87 Am. St. 628, 62 L. R. A. 931. See, also, note to *Wabash R. Co. v. Young* (162 Ind. 102, 69 N. E. 1003), 4 L. R. A. (N. S.) 1092.

In this state there is no such statute. It may be assumed that if there were any specific contract to that effect, or if there existed a uniform custom on the part of all railroad companies to give a character to their servants on the termination of the service, or as it is termed in the complaint, a "clearance," the custom would enter into every contract of employment, and the refusal to give some form of clearance would constitute an actionable breach of duty; but even in such a case, the custom must be uniform and must be alleged and proved. *Cleveland, C. C. & St. L. R. Co. v. Jenkins, supra.* In the complaint before us, no such custom is alleged; no such contract is set out. There being no statement of any fact raising the legal duty to furnish such a clearance as that described, it follows that the defendant has committed no actionable wrong in failing to furnish it. *McDonald v. Illinois Central R. Co., supra.*

Under the first phase of the case, it only remains to inquire whether the use of the words "blacklist" and "boycott," in the fifth paragraph of the complaint, are sufficient in the connection in which they are used to charge any definite actionable wrong. Black's Law Dictionary, p. 148, defines the word "boycott" as follows:

"A conspiracy formed and intended directly or indirectly to prevent the carrying on of any lawful business, or to injure the business of any one by wrongfully preventing those

who would be customers from buying anything from or employing the representatives of said business, by threats, intimidation, or other forcible means."

We have been cited to no better definition than this, and we believe that, so far as the word has a fixed meaning, this definition expresses it. It is plain that the use of the word "boycott," if it is to be so defined, has no relation to the other things charged in any part of the complaint, and means nothing without some allegation as to what things are charged as constituting the "boycott." There is no such allegation.

Black's Law Dictionary, p. 137, also defines the word "blacklist" as follows:

"A list of persons marked out for special avoidance, antagonism, or enmity on the part of those who prepare the list or those among whom it is intended to circulate; as where a trades-union 'black-lists' workmen who refuse to conform to its rules, or where a list of insolvent or untrustworthy persons is published by a commercial agency or mercantile association."

It is clear that the specific conduct in other parts of the complaint ascribed to the defendant does not in any way meet this definition. There is no allegation that the defendant made, kept or circulated any such list or any list of its discharged employees, or that the plaintiff's name was ever by the defendant entered on any such list.

Our criminal statute, Rem. & Bal. Code, § 6565, making blacklisting punishable as a misdemeanor, loosely defines the term by declaring any person punishable therefor who shall:

". . . by writing, printing or publishing, or causing the same to be done, the name, or mark, or designation representing the name of any person in any paper, pamphlet, circular, or book, together with any statement concerning persons so named, or publish or cause to be published that any person is a member of any secret organization, for the purpose of preventing such person from securing employment, or who shall willfully and maliciously make or issue any statement or paper that will tend to influence or prejudice the mind

of any employer against the person of such person seeking employment or any person who shall do any of the things mentioned in this section for the purpose of causing the discharge of any person employed by any railroad or other company, corporation, individual or individuals, . . ."

Touching a somewhat similar statute of Minnesota, the supreme court of that state said:

"Conceding that the word 'blacklist,' as used in the title, has no well-defined meaning in the law, either by statute or judicial expression, the general understanding of the term is that it has reference to the practice of one employer presenting to another the name of employees for the purpose of furnishing information concerning their standing as employees, and, so understood, it may have reference to the subject of influencing or coercing employees or employers." *State ex rel. Scheffer v. Justus*, 85 Minn. 279, 88 N. W. 759, 89 Am. St. 550, 56 L. R. A. 757, 758.

It is apparent from these definitions, whether from statute, text writer or court decision, that the word "blacklist" is a generic term and may mean any one of a variety of things. It has no such well defined meaning in law as to make its use in a pleading a definite charge of any specific misconduct against a person so charged.

We think it must be conceded that the violation of our statute, Rem. & Bal. Code, § 6565 (P. C. 291 § 159), though specifically punishable only by criminal prosecution, is a sufficient basis for a civil action in favor of the person injured. This is a general rule as to the violation of criminal statutes resulting in specific injury to particular persons. *Meshbesher v. Channellene Oil & Mfg. Co.*, 107 Minn. 104, 119 N. W. 428, 131 Am. St. 441; *Osborne v. McMasters*, 40 Minn. 103, 41 N. W. 543, 12 Am. St. 698. But in such a case, the mere allegation that the plaintiff has been blacklisted is not sufficient in view of the variety of meanings attached to that word, not only in common parlance, but in the statute itself. There must be some allegation of the facts constituting the act of blacklisting as defined by the statute, coupled with an allega-

tion that such acts have caused the injury charged. It would seem that, even in a criminal prosecution under this statute, the mere use of the word "blacklist" in the indictment or information would be insufficient, in view of the double definition of that term in the statute. It would be necessary to allege in what the blacklisting consisted, so as to bring the defendant's conduct within some phase of the statutory definition. *United States v. Cruikshank,* 92 U. S. 542; *State v Muller,* 80 Wash. 368, 141 Pac. 910. So, too, in a civil pleading it seems too plain for argument that, in order to make the conduct of the defendant the basis for an action for damages for blacklisting as defined in the criminal statute, there must be some allegation of facts meeting the statutory definition of blacklisting. The mere charge of blacklisting without stating how the blacklisting was accomplished states a mere conclusion, not an issuable fact.

In the case of *Mattison v. L. S. & M. S. R. R. Co.,* 16 Ohio Dec. 125, cited by plaintiff, the complaint, after setting out the rules of the railroad company known as its "blacklist rules" defining the blacklisting there complained of in specific terms, alleged that these rules were enforced against the plaintiff, and that "by reason of the premises" he was prevented from securing employment in his chosen vocation. There was thus supplied exactly what is wanting in the complaint before us, namely, a specific definition of the general term blacklist, and an allegation of employment of the blacklist so defined, to the injury of the complainant.

In the fifth paragraph there is no reference to any of the allegations in paragraphs three and four to connect the word "blacklist" with those allegations as defining what is meant by the use of that term. So far as it may be said to be defined at all, it is defined as the refusal to grant a clearance, which we have seen, in the absence of a statute so requiring, a contract so stipulating, or a custom so implying, constitutes no legal duty. We think that, soundly, it must be held that the words "blacklist" and "boycott," without any allegation in-

dicating in what these things consisted, as found in this complaint, are mere epithets or at most mere conclusions. There is not a single allegation or reference to any other part of the complaint defining these words or supplying a definition for them.

We are constrained to hold that the complaint states no cause of action on the case for damages for interference with or preventing the plaintiff from pursuing his occupation or vocation.

II. If the complaint states a cause of action for libel, that statement must be found in the third paragraph. The fourth and fifth paragraphs neither state nor aid in stating such a cause. Returning then to the third paragraph, we find no special damages alleged as resulting from the publication of the letter there set out. To find a cause of action for libel, therefore, we must find that the statements in the letter, which it is alleged were false, are actionable *per se*. If they are, the plaintiff would be entitled to such general damages for humiliation, injured feelings and mental suffering as would naturally result from the publication, without alleging or proving any special or specific damages. *Hanson v. Krehbiel*, 68 Kan. 670, 75 Pac. 1041, 104 Am. St. 422, 64 L. R. A. 790. He could not recover for loss of employment, or failure to secure employment, or other specific loss by reason of the publication. These would be special damages, and not being alleged as resulting from the publication, they cannot be proved.

Our statute defining criminal libel, Rem. & Bal. Code, § 2424 (P. C. 135 § 343), declares, among other things, that every malicious publication by writing, etc., which shall tend to expose any living person to hatred, contempt, ridicule or obloquy, or to deprive him of the benefit of public confidence or social intercourse or to injure him in his business or occupation, shall be a libel. We have held that, eliminating the statutory element of malice, actual or implied, the statutory definition meets the essentials of libel actionable *per se* as

generally recognized in civil actions for damages. *Wilson v. Sun Publishing Co.*, 85 Wash. 503, 148 Pac. 774; Newell, Slander & Libel (2d ed.), p. 43. It seems to us that the necessary tendency of the charge that the plaintiff had been guilty of intimidating co-employees would be to deprive him of the benefit of public confidence, and to injure him in both social and business intercourse with those with whom his vocation brought him in contact, and to injure him in the pursuit of his business or occupation. The language of the letter is actionable *per se*. The third paragraph, alleging its continued publication by the defendant, therefore stated a cause of action for libel. The complaint was open to objection for indefiniteness as to the manner of the alleged publication, but this was not ground for demurrer but should have been reached by a motion to make more specific.

Whether in view of the provisions of Rem. & Bal. Code, § 6565 (P. C. 291 § 159), defining blacklisting, the publication of such a statement as that here involved would under any circumstance be privileged is a matter which we are not now called upon to decide. The plaintiff having stood upon his amended complaint, no further amendment can be permitted.

III. It only remains to determine whether the action, considered as one for libel, was barred by the statute of limitations. Under the statute, Rem. & Bal. Code, § 160 (P. C. 81 § 67), an action for libel must be commenced within two years after the cause of action accrued. In the third paragraph of the complaint, it is alleged that the defendant first published the letter in question on October 10, 1907, and ever since that time has continued to print, publish and circulate it. In the law of libel it is elementary that each publication constitutes a separate libel. Odgers, Libel and Slander (5th ed.), p. 172; Newell, Slander and Libel (2d ed.), p. 243; *Woods v. Pangburn*, 75 N. Y. 495; *Rockwell v. Brown*, 36 N. Y. 207. The allegation, therefore, of the continued publication of the offending writing up to the time of the commencement of the

action is sufficient to render the complaint invulnerable to a demurrer raising the bar of the statute.

The judgment is reversed, and the case is remanded for further proceedings.

CROW, FULLERTON, and MAIN, JJ., concur.