CLEVELAND, CINCINNATI, CHICAGO AND ST. LOUIS RY. CO.

*v.*

CHARLES JENKINS.

*Opinion filed October 24, 1898.*

1. JUDICIAL NOTICE—*courts take judicial notice of manner of conducting railroad business.* Courts will take judicial notice of the manner in which ordinary railroad business is conducted and of the every-day practical operation of the road.

2. MASTER AND SERVANT—*master not required to give his servant a "character."* A master is not required, by statute or common law, to give to a servant quitting his employment, voluntarily or otherwise, a letter or certificate pertaining to such servant's qualifications or efficiency.

3. RAILROADS—*unless required by custom or contract a railroad need not give "clearance card" to employee.* A discharged railroad employee, or one who voluntarily quits the service, cannot maintain an action for damages against the company based upon his failure to get other employment owing to the company's refusal to give him a "clearance card," in the absence of proof that he was entitled to such card under his contract or by virtue of usage or custom.

4. USAGE—*usage, to be binding, must be uniform and long established.* A usage or custom, to be binding, must be so uniform, long established, generally acquiesced in and so well known as to induce the belief that the parties contracted with reference thereto, nothing appearing in the contract to the contrary, and that a failure to conform to such usage would be an exception.

5. EVIDENCE—*usage not established by proof of isolated instances.* It is the duty of a court to hold, as a matter of law, that an alleged usage or custom is not established where the proof consists of a few isolated transactions.

6. SAME—*a single letter of recommendation is not proof of custom in issuing clearance cards.* A letter of recommendation by a railroad company to an employee, which is purely personal, and shows on its face it is not a general form which would be given to other employees, does not tend to establish a custom on the part of the company to issue clearance cards to employees leaving the service.

7. SAME—*fact that company requires certificates does not tend to show custom in issuing them.* The fact that a railroad company requires the production of certificates of recommendation by persons seeking employment does not create any legal duty on its part to issue the same to retiring employees, nor does it in any way tend to establish a custom of issuing them.

8. INSTRUCTIONS—*instruction must base allowance of damages on the evidence.* ` An instruction which tells the jury that under certain contingencies they should find for the plaintiff, and assess his damages at such sum as they "think right, not exceeding the amount claimed in the declaration," is erroneous, as leaving the jury free to assess damages without reference to the evidence.

*C., C., C. & St. L. R. R. Co.* v. *Jenkins,* 70 Ill. App. 415, reversed.

APPEAL from the Appellate Court for the Fourth District;—heard in that court on appeal from the Circuit Court of Wabash county; the Hon. S. Z. LANDES, Judge, presiding.

This was an action on the case, brought by Charles Jenkins, against appellant, in the circuit court of Wabash county. The declaration charges that the plaintiff has been a faithful employee of the defendant for ten years as a conductor on one of the freight trains on the line of its railroad running from Cairo to Danville, Illinois; that he was discharged about November, 1893, without cause, and although, by the regulations and customs of the defendant, a letter or clearance card is usually given to discharged employees in order that they may secure employment on other roads, it being essential for that purpose, such letter or clearance card was refused to him, although he had often applied for it, whereby he had failed to secure employment; that defendant and other railroad companies had a rule or custom, which is charged to be a conspiracy, not to employ a discharged employee of another road without such a letter or clearance card; that after his discharge, and failure, on request, to receive such card, the plaintiff applied to various railroad companies for employment, but was uniformly refused on account of not having such card, to which he was entitled; that he had been receiving $85 per month from the defendant for his services as conductor previous to his discharge, and that he was qualified and competent to earn the same wages on other roads, and would have done so had he received such card; that by reason of such fail-

ure and refusal on the part of defendant he was unable to secure employment and compelled to quit such line of work, to his loss and damage.

The declaration contains one count, and avers a cause of action in case arising out of a contract. It avers the usage or custom existing upon the road of defendant and other roads, whereby a discharged employee, is entitled to such letter, showing the time of service, reason for discharge, etc., thus averring a contractual relation, out of which, as alleged, arose the duty, when such contractual relation was severed, to give a letter or clearance card for the purpose stated. The theory proceeded upon by plaintiff, as charged in the declaration, was, that after his discharge he was entitled to such a clearance card, which was refused him, and without which he could not secure employment on other roads, whereby occurred the damage stated. To this declaration defendant pleaded the general issue.

It appears from the record that shortly before the plaintiff's discharge he had been indicted by three separate indictments by the grand jury of Johnson county, Illinois,—two for larceny and one for embezzlement. Upon the confession or statement of one of the station agents of the appellant company, who had also been indicted by the grand jury for larceny in taking from cars certain goods, at various times, which were being transported, the plaintiff, Jenkins, was implicated. Upon being thus indicted, as before stated, he was suspended by the superintendent of the appellant road, and subsequently was discharged. Upon the trial of the criminal charges in the circuit court of Johnson county, on two of the indictments Jenkins was acquitted and one indictment against him was *nolled.* On different occasions, before and after the disposition of the indictments against him, he made application for the clearance card, which was refused.

A jury in the trial court found for the plaintiff and assessed his damages at the sum of $875. Motion for new

trial was overruled and judgment entered on the verdict. On appeal to the Appellate Court for the Fourth District this judgment was affirmed, and from that judgment of affirmance this appeal is brought to this court on a certificate of importance.

John T. Dye, (C. S. Conger, and H. M. Steely, of counsel,) for appellant.

Mundy & Organ, and Cullop & Kessinger, for appellee.

Mr. Justice Phillips delivered the opinion of the court:

The *gravamen* of the declaration in this case is, that the plaintiff was discharged and refused a clearance card or letter to which he was entitled, without which he could not obtain employment on any other road, and that he failed to obtain such employment, whereby he suffered damages. The declaration avers a cause of action on the case arising out of a contract. It avers a contractual relation, out of which, as alleged, arose the duty, when such contractual relation was severed, to give a letter or clearance card for the purpose stated. Unless the law imposes on appellant, in some form, the duty to give appellee, as one of its employees, a letter of recommendation or clearance card, his action in this case cannot be sustained. If a legal duty is imposed upon the employer to give to a discharged employee, or one voluntarily leaving his service, a letter of recommendation, such duty must arise either by the common law, by statute, by contract of employment, or by such a generally established usage or custom as would demand it be done. Such usage, however, must be so well known and uniformly acted upon as to raise a fair presumption it was intended to be incorporated in the contract of employment.

A distinction is to be made between what is known, in terms, as a clearance card and a letter of recommen-

174—26

dation.  This distinction is apparent, not only from the evidence in this case, but also from the knowledge which courts have of the general conduct and management of railroad business and affairs.  It is the duty of courts to take, and they will take, judicial notice of the general business affairs of life, and of the manner in which ordinary railroad business is conducted, and of the every-day practical operation of them.  *Slater* v. *Jewett*, 5 Am. & Eng. Ry. Cas. 515; *Smith* v. *Potter*, 2 id. 140.

From the evidence produced on this question, and from this judicial notice which we take of the ordinary general management of railroads, it is apparent that what is known as a clearance card is simply a letter, be it good, bad or indifferent, given to an employee at the time of his discharge or end of service, showing the cause of such discharge or voluntary quittance, the length of time of service, his capacity, and such other facts as would give to those concerned information of his former employment.  Such a card is in no sense a letter of recommendation, and in many cases might, and probably would, be of a form and character which the holder would hesitate and decline to present to any person to whom he was making application for employment.  A letter of recommendation, on the contrary, is, as the term implies, a letter commending the former services of the holder, and speaking of him in such terms as would tend to bring such services to the favorable notice of those to whom he might apply for employment.

As stated, an action for failure to give an employee either of the above forms of letters must be based either upon the common law or the statute, or arise out of the contract of employment, or be required by usage or custom.  By the common law no such duty was imposed upon the employer.  In the American and English Encyclopedia of Law (vol. 14, p. 799,) it is said: "It is not legally compulsory on a master or mistress to give a discharged servant any character, it matters not how much

a servant is entitled to character in fairness or how cruel the refusal might be." In Townshend on Slander and Libel (4th ed. p. 425) it is said: "On examination it will be perceived that this right of an ex-employer to give, as it is termed, a 'character' to his ex-employee is nothing more than a consequence of the right to communicate one's belief. * * * No one is under any obligation to make such a communication. He does not owe it as a duty, either to the employer or the employee, to make any communication on the subject." In the case of *Railroad Co.* v. *Kasson,* 17 N. Y. 224, which involved a similar question, in the opinion it was said: "If I know that a villain intends to defraud or in any way injure my neighbor, it is doubtless my duty, as a good citizen and as a christian man, to put him on his guard. But there is no rule of law which renders me liable for his loss in case of my neglect of this duty. It is a moral duty, simply,—not recognized by law." In Smith on Master and Servant (Text-book ed. pp. 380, 381,) it is said: "It is clear, however, that in the absence of any specific agreement to that effect there is no legal obligation binding a person who has retained another as a servant, to give that person any character at all on dismissal, and that no action will lie against him for refusing to do so." In *Carroll* v. *Bird,* 3 Esp. 201, it is set forth in the declaration that the plaintiff's wife, having been retained by the defendant as a servant, was dismissed from the service; that after she was so dismissed she applied to a person of the name of Stewart for the purpose of being retained and hired as a servant; that Mrs. Stewart was ready and willing to have hired and taken her into her service if the defendant would have given her a character and such character was satisfactory; that it was the duty of the defendant, by law, to have given her such character as she deserved; that the defendant, not regarding her duty, wholly refused to give her any character whatever, by reason of which the said Mrs. Stewart refused to hire her

into service. In the opinion rendered in this cause Lord Kenyon said: "There was no case, nor could the action be supported by law. By some old statutes regulations were established respecting the characters of laborers, but in the case of domestic and menial servants there was no law to compel the master to give the servant a character. It might be a duty which his feelings might prompt him to perform, but there was no law to enforce the doing of it."

A character is not given for the benefit of the ex-employee, although he may be either injured or benefited by reason of such a character being given; nor does the right to give such a character arise out of a duty to the employer, but the right or moral duty, such as it is, is a duty in the interest of society and the public good, and neither the proposed employer nor the employee has a legal right to demand it. Such communications have been made not only by an ex-employer, but also by any person possessing the information and the belief that such information is true. They may be made either with or without request, in the interest of the public good and as a moral duty to society, when the party to whom the communication is made has an interest in it, and the party by whom it is made stands in such a relation to him as to make it a reasonable duty, or at least proper, that he should give the information. (*Sunderlin* v. *Bradstreet*, 46 N. Y. 188; *Moot* v. *Dawson*, 46 Iowa, 533; Townshend on Slander and Libel,—4th ed.—395-397; 13 Am. & Eng. Ency. of Law, pp. 415, 416; *Bacon* v. *Michigan Central Railroad Co.* 31 Am. & Eng. Ry. Cas. 357.) In Parsons on Contracts (p. 328) the author says: "The master is under no legal obligation to give a testimonial of character to his servant." It is also a well known rule of law that no man is compelled to enter into business relations with any other person unless he desires so to do, and it is also as well established that upon the dissolution of such business relations no man shall be compelled to divulge to

the public his reasons, good or bad, for such dissolution. In Cooley on Torts (p. 328) it is said: "It is a part of every man's civil rights that he be left at liberty to refuse business relations with any person whomsoever, whether the refusal rests upon reason, or is the result of whim, caprice, prejudice or malice. With his reasons neither the public nor third persons have any legal concern."

A further citation of authorities is unnecessary to establish that by common law no liability was imposed upon the master to issue any form of character to his servant. By statute no duty is imposed upon the employer to give to an employee a clearance card, nor does any right to demand such accrue to the employee. Therefore, if any cause of action exists to the appellee in this case it must arise out of his contract of employment, or there must be shown and established such a custom or usage as would clearly entitle him to such. Under such views of the subject matter involved in this case, where no action, either by law or by statute, accrued to the plaintiff, it was necessary for him to produce, in the first instance, evidence tending to show that a usage or custom existed on appellant's railroad, at the time of his contract of employment, to give to each discharged employee, or those voluntarily quitting its service, a clearance card or certificate of evidence, and tending to show he was entitled to it under his contract of employment.

The fact that the master requires certificates of recommendation from persons seeking employment is certainly no reason why he should be legally compelled to give certificates to those leaving his employment. In this case the testimony produced, showing or tending to show that appellant required certificates of recommendation from persons seeking employment with it, does not in any manner tend to establish the fact that it gave to persons leaving its employment certificates of like character. For the purpose of establishing the existence of a usage or custom under which appellee was entitled to

a clearance card a number of witnesses were offered on the trial. The witness Baker had worked for the predecessor of the appellant road but had never worked for appellant. At the time he quit its employ he had not received a clearance card, nor had he ever seen but one such card issued by the appellant road, and that by a master mechanic. Another witness, Bedell, had worked for appellant, but on retiring from its service had received no card, and apparently, from his testimony, was refused one. Still another witness, Shearer, offered by appellee, had never worked for appellant but had worked for other companies, and testified that he did not know positively what custom or usage existed. The witness Hunt worked for appellant, and on retiring from its service, in 1894, asked for a clearance card but did not get one. Shields, another witness, worked for appellant in 1891, and on retiring from its service received a letter of recommendation, which was introduced in evidence. The letter is purely personal in its character, and shows on its face it was written and intended for the witness, and was not a general form which would be given to other employees. This witness had never seen any other card or letter issued by the appellant except his own. He produced a number of letters of recommendation, or, as they might be termed, clearance cards, from other roads, which were admitted over the objection of the appellant, with the understanding the appellant road should be connected with them in order to make them admissible, and that it should be shown they were issued by other roads in accordance with an understanding or agreement in which appellant took part. No such connection was made, however, and such letters issued by other roads were not admissible. For the purpose of proving the usage or custom on the part of the appellant road, therefore, the only evidence offered was one letter, purely personal in its character, and the statements of several witnesses that such a custom or usage existed, but with-

out any apparent knowledge on which to make such statements. No other evidence was produced tending to show that appellant issued such cards or letters, or that it required them before employing its servants. A number of the witnesses above named, offered by the appellee, testified that on leaving the service of appellant they had received no such letters or cards. The positive and direct testimony of the superintendent of the appellant road,—the person charged with the duty of issuing such clearance cards or letters of recommendation if any were to be issued,—is that no custom or usage existed, and that it was of rare occurrence that an employee leaving its service received a letter of any character.

To establish a usage or custom it is not sufficient to prove certain isolated instances. The usage must be positively established as a fact, and not left to be drawn, as a matter of inference, from transactions. (27 Am. & Eng. Ency. of Law, p. 728.) A usage which is to govern a question of right should be so certain, uniform and notorious as probably to be known to and understood by the parties as entering into their contract, (*United States* v. *Duval*, Gilp. 336,) and cannot be proved by a single, isolated instance. (*Dean* v. *Swoop*, 2 Binn. 72; see, also, *Janney* v. *Boyd*, 30 Minn. 311; *Taylor* v. *Mueller*, id. 343.) So, also, it is held that particular instances of a certain practice in a bank do not establish a usage, (*Allen* v. *Merchants' Nat. Bank*, 22 Wend. 215,) nor instances in one or two banks other than the one concerned in the alleged usage. (*Chesapeake Bank* v. *Swain*, 29 Md. 501.) In *Herring* v. *Skagg*, 73 Ala. 446, it was held that a custom is a fact, and is as capable of proof as any other fact; that it may be proved by evidence of facts and instances in which it has been acted upon, but is not proved by evidence that it was acted upon in a few particular instances of dealing, nor is such evidence admissible to establish its existence.

It is apparent, therefore, that a custom or usage, to be binding, must be so uniform, long established and gen-

erally acquiesced in, and so well known, as to induce the belief that parties contracted with reference to it, if nothing is stated to the contrary, and that the failure to conform to it would be an exception. (*Bissell* v. *Ryan,* 23 Ill. 517; *Wilson* v. *Bauman,* 80 id. 493.) A custom must be general and uniform. It must be certain, reasonable and sufficiently ancient to afford the presumption that it is generally known, (*Turner* v. *Dawson,* 50 Ill. 85,) and must not be in opposition to any principle of general policy, nor inconsistent with the terms of the agreement between the parties or against the established principles of law. Besides this, it must be generally known and established, and so well settled and so uniformly acted upon as to raise a fair presumption that it was known to both contracting parties, and that they contracted in reference to it and in conformity with it. (*Turner* v. *Dawson, supra; Packard* v. *VanSchoick,* 58 Ill. 79; *Papin* v. *Goodrich,* 103 id. 86.) If it should appear, therefore, from the evidence, as it does in this case, that the foregoing elements are not established, and only a few isolated instances are shown to prove a usage or custom, the court, as a matter of law, should have held that a usage or custom was not thereby established. The evidence must clearly show the rule as above stated, and that a failure to conform with such custom would be unusual.

At the close of the plaintiff's evidence the defendant moved the court to instruct the jury to find for the defendant, which motion was accompanied by an instruction. This motion was renewed at the close of all the evidence in the case. The legal question is therefore presented to this court, whether or not there was, at the close of plaintiff's testimony, evidence tending to establish the material averment in the declaration necessary to be proven, and also whether or not, at the close of all the evidence, it was sufficient upon which to base a verdict if rendered. The rule in this regard is so well established that no citation of authorities is necessary. There

·was no evidence tending to show any general custom or usage existing on the appellant road and entered into between it and other roads, as alleged in the declaration. It is clear the evidence on that question was not sufficient to support a verdict, and the motion offered at the close of plaintiff's evidence and renewed at the close of all the evidence, and accompanied by an instruction to find for the defendant, should have been allowed and the instruction given.

. Complaint is also made of the first instruction given for appellee, which tells the jury that, under certain contingencies, "you should find for the plaintiff and fix his damages at such sum as you think right, not exceeding the amount claimed in the declaration." No reference is made to the evidence in the case. This form of instruction is erroneous and has been frequently condemned by this court. (*City of Freeport* v. *Isbell,* 83 Ill. 440; *Chicago, Rock Island and Pacific Railroad Co.* v. *Austin,* 69 id. 426.) In the latter case, where an instruction concluded, "the jury should give the plaintiff such damages as they, under their oaths, can say will be a fair compensation for said injury, not exceeding, however, the sum of $10,000, the amount claimed in the plaintiff's declaration," this court said: "The law required the jury to determine the liability of the defendant from the evidence, and from that alone, and an instruction which would permit them to enter into an open field of investigation cannot be sustained." The instruction was erroneous in not confining the jury to the evidence in considering their verdict.

The second instruction given for appellee is subject to the same criticism, and was also erroneous, and should not have been given without modification. Errors are also assigned as to the other of appellee's instructions, but it is not necessary in the condition of this record to discuss them.

It is also assigned as error by appellant that the letters of character or recommendation written by officials

of other roads were improperly admitted in evidence against appellant. The specific objection made by appellant to this evidence was its incompetency unless appellant should be in some way connected with such letters; that it should be shown to have had knowledge and approval of their issuance, and be shown to have been a participant in a common plan or understanding that letters of such character should be given to discharged employees of such roads and that such letters be required as a condition precedent to employment. For no other purpose could these letters issued by officials of other roads be admitted as evidence against this particular appellant. If such a common understanding or conspiracy as charged in the declaration existed and was unlawful, it was certainly necessary to in some manner connect appellant with it. This the appellee entirely failed to do, and the letters should not have been permitted to go to the jury.

In this case it is not shown, or even attempted to be shown, that appellee, at the time of his contract of employment with appellant, and as an incident of such employment, received any assurance that he would, at the time of his expiration of service, receive any clearance card or letter of recommendation from the appellant railroad. A rule in force on appellant's road, and known as Rule 13, was offered in evidence, which reads as follows: "If a conductor is taken off his run for any cause, he shall be granted a full investigation, hearing and decision within five days, at which time he shall have the right to have another conductor of his own selection to appear and speak for him, and shall have the right to appeal from the decision of a special to the general officers of the road. If exonerated he shall receive pay for time lost." Appellant contends, and properly so, that this rule had no application to appellee's case. It was meant and intended to apply to cases in which a conductor, for some violation or infraction of appellant's rules or re-

ported improper conduct, should be suspended. In this case appellee had been indicted by the grand jury of Johnson county for an alleged violation of the criminal law of the State. The only proper vindication was by a *nolle* of those indictments or an acquittal by a trial jury. Such could not reasonably occur in five days, nor could appellant, by its rule, fix any time. Its own investigation would stand for naught. The other provisions of the rule show clearly it has no application to this kind of a case. This rule could in no sense be said to constitute any part of the contract of employment, as it only appears to have been adopted in 1890 and appellee had been in the service of the company some six years or more before that time. There being no other evidence tending to show appellee was entitled to a clearance card as part of his contract of employment, his action could not be maintained on that ground.

Another rule said to have been in existence on appellant's road is averred in the declaration. No such rule appears in the record, however. A rule numbered 11 (presumably this rule) was offered to be introduced by plaintiff below in rebuttal, not for the purpose of showing the effect of the rule, but to contradict the statements of two witnesses of defendant who had been asked whether or not such a rule was in existence. From the record it would appear the rule, if in force, applied to engineers and brakemen, but not to conductors, and the court on this ground, or for the reason the contradiction would be as to immaterial matter, refused to admit it. No cross-errors are assigned by appellee upon the action of the court in so doing, but an examination of the record indicates the trial court committed no error in that respect. Had such a rule applicable to conductors, providing for the issuing of clearance cards, as alleged in the declaration, been offered and established as a part of plaintiff's case, a different question might have been presented for the consideration of this court. In the condi-

tion of this record, however, where no usage or custom was shown to exist under which appellee could recover, and no provision incident to his contract of employment imposing upon appellant the duty to issue a clearance card or certificate, his action must fail.

For the errors herein indicated the judgment of the Appellate Court for the Fourth District and the judgment of the circuit court of Wabash county are reversed and the cause remanded.    *Reversed and remanded.*