[No. 8090.]

## MEEK ET AL. V. SMITH.

1.  CORPORATIONS—*Liability for Torts—Conspiracy.* A corporation is liable
in damages for torts committed in pursuance of a conspiracy to which it is
party, to the same extent as individuals. (463.)

Those engaged in a conspiracy may resort to different means, at differ-
ent times, to effect the object of the combination, yet, even though their
several acts are injurious in very unequal proportions, the liability rests
upon each and all. (464.)

The evidence examined and held to charge all the defendants. (464.)

2.  —— *Liability for Acts of Agents.* A corporation may, through those
in charge of its affairs, be guilty of malice and oppression, and liable in
actual and exemplary damages. (463.)

And if the agents, acting within the apparent scope of their authority,
do injury to another, the corporation is liable, even though the agents exceed
their authority, or disobey their instructions. (463.)

3.  —— *Imputation of Agent's Malice.* If the wrongful act of the agent
is prompted by an improper motive, such motive is imputed to the cor-
poration. (463.)

4.  TORTS—*Connivance or Consent.* All who command, advise or counte-
nance the commission of a tort, or who, it being committed for their benefit,
approve of it after it is done, are liable in the same manner as if they had
performed the injurious act with their own hands. (464.)

5.  MITIGATION OF DAMAGES—*Provocation,* to avail in mitigation of dam-
ages, must be so near in point of time to the act for which damages are
demanded as to warrant the presumption that the wrongful act was com-
mitted under the immediate influence of the passion engendered by the
preceding provocation. If time for reflection had intervened the wrongful
acts of defendant are attributed, not to the provocation, but to the spirit
of revenge. (468.)

A publication four days prior to the wrongful acts complained of, held inadmissible to mitigate the damages. (469.)

6. —— *Offer to Return Goods*, which the defendant has converted, does not deprive the owner of his right to the reasonable value of the goods. (473.)

7. INSTRUCTIONS—*Construed*. Action for conversion of plaintiff's printing plant, and the destruction of her business. The jury were told that if they should find for the plaintiff, she was "entitled to the reasonable value of such property which you may find from the evidence was converted by defendants, and reasonable damages for the destruction of her business." *Held*, that neither the conversion of plaintiff's goods, nor the destruction of her business, was assumed by the instruction.

That the instructions do not limit the plaintiff's recovery to the amount demanded in the complaint is of no consequence, where the recovery is less than the amount so demanded. (473, 474.)

8. —— *Objections To*. Where an instruction contains several propositions, some of which are sound in law, it is the duty of counsel objecting thereto to point out specifically the part of the instruction regarded as erroneous. An objection that the instruction "is not a correct statement of the law" is too general to require attention. (471.)

Where a general objection to an instruction is followed by a specific statement of the defect alleged, the general objection is absorbed in the specific. (473.)

*Error to Gunnison District Court.* Hon. THOMAS J. BLACK, **Judge.**

Mr. E. M. NOURSE, Messrs. SAPP & NASH, for plaintiffs in error.

Mr. S. D. CRUMP, Mr. H. C. ALLEN, Mr. CHARLES S. WITWER, for defendant in error.

WHITE, J., delivered the opinion of the court.

Defendant in error, as plaintiff, brought suit for damages against plaintiffs in error, as defendants. Three causes of action were embodied in the complaint. The first was for conversion of plaintiff's property, and the destruction of her business; the second, for unlawful arrest and false imprisonment, and the third, for deporting her from the town and county in which she resided. The basis of the action was that the defendants entered into a conspiracy to

commit the wrongs charged, and in pursuance thereof actually committed them. The Colorado Yule Marble Company, and The Crystal River and San Juan Railway Company, defendant corporations, filed separate answers, while the answer of the other defendants was joint. A verdict was rendered in favor of plaintiff, and from the judgment entered thereon the defendants have brought the case here for review.

The contentions of importance, upon which plaintiffs in error rely for reversal of the judgment, may be stated as follows: (1) The evidence failed to establish a conspiracy and the doing of the alleged wrongful acts pursuant thereto, or to connect the defendant corporations therewith; (2) The court erred to the prejudice of defendants in its rulings on the admission and rejection of evidence; (3) The court, over the objection of the defendants, improperly instructed the jury.

1. A corporation may be held liable in damages for torts in pursuance of a conspiracy to which it is a party, to the same extent as individuals, and by reason of the acts of those whom it has placed in charge of its affairs, be guilty of malice or oppression and subject to both actual and exemplary damages. If its agent, in the discharge of his duties and within the apparent scope of his authority, does an act from which a third person suffers injury, the corporation is liable for the damages resulting therefrom, notwithstanding the agent may have failed in his duty in the premises, or even disobeyed his instructions. Moreover, if the act is prompted by fraudulent or malicious motives, the agent's fraud or malice is imputed to the corporation. *Western Union Tel. Co. v. Eyser,* 2 Colo. 141; *Dunshee v. Stand. Oil Co. et al.* (Iowa) 146 N. W. 830, 10 Cyc. 1203-1218; Clark & Marshall on Corporations, pp. 627 *et seq.; Van Cleef v. Chicago,* 240 Ill. 318, 88 N. E. 815, 23 L. R. A. (N. S.) 636, 13 Am. St. 235.

All, whether corporations or individuals, who aid, ad-

vise, command or countenance, the commission of a tort by
another, or who approve of it after it is done, are liable, if
done for their benefit, in the same manner as if they had
done the act with their own hands.   They may resort to
different means at different times to effect the object of the
combination, and in doing so their several acts may be rela-
tively, so far as actual injury results, in very unequal pro-
portions.   Some may plan, others may execute, but the
legal blame and liability therefor rests upon each and all.
Cooley on Torts, p. 198, *et seq.;* 2 Mod. Amer. Law, Sub. 19,
p. 431; 5 Ruling Case Law, §43, p. 1093, *et seq.*

Bearing in mind these well established rules, and di-
recting our attention to the facts of the case, we have no
doubt of the sufficiency of the evidence to warrant the jury
in finding that defendants, including the two corporations,
entered into a conspiracy to commit the wrongs of which
plaintiff complains, and, in pursuance thereof, actually com-
mitted them.   Plaintiff resided in the town of Marble, and
was engaged in publishing a newspaper therein.   The prin-
cipal business carried on in the town was conducted by de-
fendant, the Colorado Yule Marble Company, to which the
other corporation defendant was auxiliary.   The defendant
Meek was president of both corporations.   Plaintiff had,
from time to time, published articles in her paper, which it
was claimed injured the business of the first named corpo-
ration in selling its capital stock, and thereby retarded the
business and prosperity of the entire community.   In August
or September, 1910, the president of the defendant corpo-
rations called a meeting of the citizens of the town, which
was held at his residence, and attended by practically all
of the business men of the town, including several of the
defendants herein.   At this meeting the president of the
defendant corporations stated that certain articles pub-
lished in plaintiff's paper were injuring the sale of the stock
of the defendant marble company, and he had called the
business men of the town together to consult with them,

and devise some means and manner of getting rid of plaintiff and her paper; that they must be gotten rid of in some way, and asked each one there to express his views. This was done, nothing being discussed except the plaintiff, her newspaper, and the articles published therein. A committee was then appointed to draft resolutions for the purpose of forming a business men's association, or chamber of commerce. A chamber of commerce was thereafter organized, composed of the business men of Marble, certain employees of the defendant corporations, and of other industries of the community. In January, 1912, one or more of the defendants were invited by the president of the corporations to attend, and did attend, a meeting of the chamber of commerce, where he made a talk relative to the plaintiff's newspaper; and thereafter, at that meeting, resolutions were adopted declaring that the articles published in reference to the defendant, the Colorado Yule Marble Company, were derogatory to its interests, and all of the business, social, religious and educational interests of the town. On March 26, 1912, a printed hand-bill was circulated signed, "By Order of Committee," in which it was stated that a mass meeting was called at a designated place for that evening at 8 o'clock; that every man and woman in the town of Marble was invited to be present, and that a matter of vital importance to the town would be considered. At the appointed time and place more than two hundred persons assembled, and the meeting was called to order and presided over by the chief clerk of the defendant Marble Company, who had been active in arranging for and calling the meeting. He stated, however, that he was not representing the Marble Company. In the course of his remarks he asserted that nothing had so damaged the company as the published statement in plaintiff's paper that "the company was a stock selling swindle"; that the time had arrived when the town must be rid of plaintiff, and that "we have the right, as citizens of this town, to say who are objectionable charac-

ters, and this privilege is to be exercised here tonight." He thereupon read a set of resolutions which had been previously prepared. The resolutions closed as follows: "Resolved, that we hereby request Miss Sylvia Smith to take her departure from the Town of Marble, never to return." Several addressed the meeting, some of whom had attended the meeting called by, and held at the home of, the president of the defendant corporations, as hereinbefore stated. Those who addressed the meeting stated, in substance, that plaintiff was a menace; that when the Marble Company quit operation the town would go down; that it would be well for plaintiff to get out of the town; that it was expected the committee would adivse her that if she did not obey the mandate of the resolution she would often wish she had; that nothing was so badly needed as the abatement of her newspaper. Among those making remarks at the meeting was the physician of the defendant Marble Company. A committee of twenty-five, consisting of fifteen men and ten women, headed by the presiding officer of the meeting, was appointed with instructions to meet the following day, wait upon the plaintiff and acquaint her with the resolutions. Pursuant to this arrangement the committee met and went in a body to plaintiff's residence. The resolutions were read to plaintiff by the president of the meeting, who said to her: "You have just seventy-two hours in which to leave Marble, never to return." The committee was accompanied by the "head gate man" of the Marble Company. Subsequent to the visit of the committee the town marshal, who was also an employe of the company, arrested plaintiff, and placed her in the town jail, purporting to act in that regard by virtue of a paper signed by the mayor, who was likewise an employe of the Marble Company, which directed him to take charge of her, but in no sense charged a criminal offense or the violation of any ordinance of the municipality. Plaintiff remained in jail for several hours. While she was so incarcerated some of the defendants dismantled her printing

plant, removed the press and other appliances from the building she occupied, and stored them in the basement of the store of one of the defendants. Early the next morning plaintiff was taken from the jail by the marshal and his assistant, conducted to the train operated by the defendant railroad company, which was in charge of a conductor who had been present at the mass meeting aforesaid. She was thereupon placed aboard the train, and subsequently informed the conductor that she was being deported. She had no ticket and declined to pay railroad fare, but, nevertheless, was carried out of the county. The conductor testified at the trial that he paid her fare out of his own pocket.

The acts of which plaintiff complains seem to be the natural fruitage of the seed sown by the president of the defendant corporations at the aforesaid meeting at his residence in 1910. The Marble Company and the Railroad Company were interdependent corporations. The business of the latter was dependent almost entirely upon the prosperity of the former, and the same person was president of both. He asserted that articles published by the plaintiff had injured the company in selling its stock, and called a meeting for the avowed purpose of ridding the community of her and her publication. Within three months prior to the commission of the wrongs suffered by plaintiff he attended a meeting of the chamber of commerce, and was instrumental in having resolutions passed denouncing the articles published by her, as derogatory to the interests of his company, and the mass meeting in March was attended by the employees of both his corporations, some of whom reiterated the very words, in reference to the necessity of getting rid of plaintiff and her publication, to which he had previously given expression at the meeting held at his residence. The servants of one of the defendant corporations were the active leaders in the meeting, and the carrying to the plaintiff of the resolutions there adopted, and the subsequent arrest and incarceration of plaintiff in the jail, and her removal

therefrom to the train. The servant of the other defendant company, with full knowledge of the purposes and objects in view in getting rid of plaintiff, and in the apparent scope of his authority knowingly made his master, the defendant railroad company, the instrumentality by which she was deported, which, together with the destruction of her property, accomplished the original object which the president of the defendant corporations had in mind.

2. Defendants offered in evidence a copy of the paper published by plaintiff containing the article which they assert was the immediate cause of the mass meeting of March 26, 1912. The date of the paper was the 22nd of that month. The object, as stated by counsel for defendants, of introducing the paper in evidence was to show wrongful and malicious motives on the part of the plaintiff, her persistency in antagonizing the citizens of Marble, and in mitigation of damages. To show the absence of a settled, malicious purpose to injure the plaintiff, the defendants in mitigation of damages had the right to prove that they were excited, and provoked to do what they did by the acts or declarations of the plaintiff, occurring so nearly concurrent with the acts charged against them that that which she did might reasonably be presumed to have excited and provoked their acts constituting the basis of the suit. In such case the concurrent acts become, as it were, parts of the *res gestae*. It is certain, however, that one unlawful act can not be set off by another, and unless the record shows that the acts of plaintiff were the immediate or proximate cause of the unlawful acts of the defendants, the proof of the former was not admissible. Provocation, to be available in mitigation of damages, must be so recent with respect to the acts for which damages are claimed as to induce the presumption that the latter were committed under the immediate influence of the passion engendered by the former. If the intervening time between the acts of the plaintiff, relied upon in mitigation of damages, and the acts of the defend-

ants, forming the basis of the suit, is sufficient to give opportunity for reflection the alleged provoking acts can not be considered, for the defendants' acts, under such circumstances, are, the law presumes, prompted by revenge. We think the proffered evidence under consideration is within the rule last stated and was clearly inadmissible. The publication was on the 22nd of March. Four days later the mass meeting was held. On the two days succeeding, the wrongs to plaintiff, forming the basis of this suit were committed. As said in *Gronan v. Kukkuck*, 59 Iowa, 18, 19, 12 N. W. 748: "A provocation arising on a day prior to the assault cannot be shown in mitigation of damages, for the law presumes sufficient time intervened before the assault to allow the passions to subside, and reason to regain control of the mind." To the same effect is *Quinby v. Minnesota Tribune Co.*, 38 Minn. 528, 38 N. W. 623, 8 Am. St. 693.

We have shown under subdivision 1 that no error was committed in the admission of the evidence relative to the meeting in 1910, and the statements made at that time by the president of the defendant corporations. The action involved a conspiracy by the defendants, and evidence tending to establish such conspiracy was competent, although it related to occurrences long prior to its consummation. The articles published by plaintiff may have been reprehensible in the extreme; they may have been unjustified and libelous, but this could not justify the defendants punishing plaintiff by destroying her property, placing her in jail or deporting her. If her acts were wrongful and illegal she should have been called to account in the manner the law provides. To permit the punishment of offenders in any other way than provided by law destroys liberty and leads to anarchy. Order can be maintained and rights preserved only by requiring all persons to observe the law in dealing with others who violate it.

3. The instruction given relative to the measure of

damages is the only one, to which objection was made, that we deem necessary to consider.  It is as follows:

"If you find the issues herein in favor of the plaintiff upon the first cause of action, namely, for the conversion of her property and the destruction of her business, then she is entitled to recover the reasonable worth and value of such property which the jury may find from the evidence was converted by the defendants and reasonable damages for the destruction of her business.  And if you find in favor of the plaintiff and against the defendants or some number of them, on the second and third causes of action, then the measure of her damages should be a reasonable compensation for the injuries done.  And in that connection you should take into consideration any shame, humiliation and disgrace which the evidence may show she has suffered, any physical or mental pain and indignity and disgrace, if any, put upon her by reason of such action; and in that connection you may consider the character and condition of the place where she was imprisoned.  And as compensatory or actual damage, if the jury find in favor of the plaintiff, she should be allowed a fair and reasonable amount, both for injury to her property and business and to her person and liberty as well."

The sole objection, or exception, taken thereto was embodied in the following colloquy between counsel for defendant and the court, to-wit:

Counsel for defendants:  "We object to it as not being a correct statement of the law; that it assumes that property has been converted, and is no longer her's, notwithstanding the tender in the pleading; that by the verdict of the jury the defendants cannot be given title to it—the title still remains in her, and it seeks to give her the value of the property and also to retain it—it is not a correct statement of the law."

Court:  "After the words 'the reasonable value of such property,' I will insert by interlineation these words: 'which

the jury may find from the evidence was converted by the defendants.'"

Counsel for defendants: "I renew the objection to this instruction as modified by the court for the reasons given to the original instruction."

It is obvious that more than one distinct legal proposition is involved in the instruction, and when the language thereof is fairly considered, it is apparent that some are correctly stated. The jury were told in other instructions that in order for plaintiff to recover upon either cause of action she must make out such case by a fair preponderance of the evidence. By the instruction in question they were told, substantially, that if they found that plaintiff had discharged this burden as to the false arrest, imprisonment and deportation, the measure of her damages therefor should be a reasonable compensation for the injuries done, and, in arriving at what a reasonable compensation would be, they were authorized and directed to consider any shame, humiliation and disgrace which the evidence might show she had suffered, any physical or mental pain and indignity and disgrace, if any, put upon her by such action, coupled with the character of the place where she was incarcerated. As to any shame, humiliation and disgrace plaintiff suffered, the jury is expressly directed and confined to that which the evidence may show; and this, by implication is equally true, we think, of the other elements of damage embodied in this clause of the instruction, and likewise as to the compensation, if any, to be awarded the plaintiff. Another instruction properly defined exemplary damages, and applied the law thereof to the facts of the case. It was, therefore, the duty of the defendants to point out specifically the part of the instruction regarded as erroneous. The rule in this regard is declared in *Beals v. Cone*, 27 Colo. 473, 488, 62 Pac. 948, 83 Am. St. 92, as follows:

"At the conclusion of the instructions given by the court of its own motion, which embraced the one under con-

sideration, an exception in this form was preserved: 'To the giving of which instructions, and to each and every thereof, the plaintiff by his counsel then and there duly excepted.' This is equivalent to saving an exception to each instruction separately, but it cannot avail as against any instruction to which it is directed, which contains a correct statement of the law, because it is insufficient to point out that which is incorrect from that which is correct."

The New Jersey Court of Errors and Appeals in *Holt v. United Security Life Ins. & Trust Company*, 76 N. J. Law 585, 593, 72 Atl. 301, 21 L. R. A. (N. S.) 691, 696, considers the rule in the following language:

"To this instruction (which obviously involves several distinct legal propositions), the defendant took two exceptions,—one upon the ground that it was 'not such a specific and intelligible definition of the measure of damages as aids the jury in arriving at a proper solution,' and the other 'for the reason that these are not such elements as the jury have a right to consider.' Considering these exceptions as merely negativing the correctness of the instructions given, they are both multifarious, in that they challenge an instruction that contains several different legal propositions. For the proper administration of justice in our common-law courts, it is important to enforce the established principle that the proper function of an exception is to direct the mind of the trial judge to a single and precise point in which it is alleged that he has erred in law, so that mistrials due to inadvertence and error may be obviated. If an exception does not do this, it furnishes no ground for reversal on error. An exception which challenges an instruction to the jury that combines several different propositions of law is of no avail, unless it shows the precise ground of objection, in which event the review is confined to the specific ground alleged."

Applying the rule, it follows that the only objections to the instruction we are at liberty to consider are those specifically enumerated. However, we think that when counsel

objected to the instruction "as not being a correct statement of the law" and followed that with specific enumerations of its alleged defects, the general objection was thereby limited and absorbed in the specific. The fact that we have frequently criticised a general objection to a specific instruction, and suggested that trial courts should require counsel, at the time of taking exceptions, to briefly point out wherein the instructions are erroneous, strengthens our view as to the meaning we have ascribed to the objections in question. *City of Denver v. Hyatt,* 28 Colo. 129, 63 Pac. 403; *Portland-G. M. Co. v. O'Hara,* 45 Colo. 416, 423, 101 Pac. 773.

While it is true that the instruction is not well worded, we think it invulnerable to the objections made at the trial, and none other will be considered. Plaintiff's property was converted by defendants, and simply pleading that they were willing to return it in no sense deprived her of the right to recover in damages for its reasonable value. The instruction in no sense assumed that the property had been converted. It expressly conditioned the right of plaintiff to recover in damages for its reasonable value. The instruction in no sense assumed that the property had been converted. It expressly conditioned the right of plaintiff to recover its reasonable value upon the jury first finding the issue thereof in favor of plaintiff. This is equally true relative to the destruction of her business. It is true the instruction does not say that the verdict must not exceed the amount prayed for in the complaint, but this is of no consequence. The amount of the judgment was less than the damages charged in the complaint.

Other errors assigned and argued, which have not been disposed of, contrary to the contention of defendants, in the views hereinbefore expressed, are not of sufficient moment to justify discussion. The judgment is, therefore, affirmed.

*Judgment affirmed.*

Decision *en banc*.

Mr. JUSTICE GARRIGUES not participating.

CHIEF JUSTICE GABBERT and Mr. JUSTICE BAILEY dissent.

CHIEF JUSTICE GABBERT dissenting:

The instruction given on the subject of actual damages was erroneous, for the reason it wholly failed to advise the jury that such damages must be determined from the testimony. That this omission to so instruct left the jury without any restrictions in assessing damages, is made specially apparent from the closing sentence of the instruction, which is as follows: "And as compensatory or actual damage, if the jury find in favor of the plaintiff, she should be allowed a fair and reasonable amount, both for injury to her property and business, and to her person and liberty as well." Thus leaving it to the jury to assess such sum for actual damages as in their judgment was fair and reasonable, without regard to the testimony. An instruction which does not confine the jury to a consideration of the evidence in awarding actual damages, is erroneous. Hughes on Instructions to Juries, sec. 106; *City of Freeport v. Isbell,* 83 Ill. 440, 25 Am. Rep. 407; *Cleveland C. C. Ry. Co. v. Jenkins,* 174 Ill. 398, 51 N. E. 811, 62 L. R. A. 922, 66 Am. St. 296.

The law requires a jury to determine actual damages from the evidence, and from that alone, and an instruction which permits them to enter upon the field of conjecture, and arbitrarily assess damages without considering the testimony, cannot be sustained. The instruction being erroneous as a whole, the general objection was sufficient. The judgment should be reversed, and the cause remanded for a new trial.

Mr. JUSTICE BAILEY concurs in the foregoing views.