No. 17,038.

HERZIG *v.* FEAST, DIRECTOR OF THE DEPARTMENT OF
GAME AND FISH ET AL.
(259 P. [2d] 288)

Decided June 15, 1953.   Rehearing denied July 6, 1953.

Mr. GEORGE J. ROBINSON, Mr. GEORGE G. PRIEST, Mr. RAY A. CURRAN, for plaintiff in error.

Mr. DUKE W. DUNBAR, Attorney General, Mr. H. LAWRENCE HINKLEY, Deputy, Mr. FRANK A. WACHOB, Assistant, for defendants in error.

Mr. WILLIAM P. HORAN, Mr. JOHN F. MUELLER, for defendants in error Feast and Hart.

*En Banc.*

MR. JUSTICE HOLLAND delivered the opinion of the court.

PLAINTIFF in error, who was plaintiff in the trial court, on October 10, 1950, obtained a resident deer hunting license from an authorized. agent of the Game and Fish Department of the State of Colorado. This license plainly shows that in obtaining same, plaintiff disclosed that he was not a citizen of the United States, and not a citizen of the State of Colorado, but had resided in the state for five years. After obtaining the license, plaintiff went to a hunting area in Eagle county and killed a deer which he checked through the Idaho Springs checking station on the way home. On October 23, defendant Forgett, an officer of the Game and Fish Department, went onto the premises of plaintiff, took the deer into his possession, and in lieu of actually arresting plaintiff, apparently caused him to sign a consent for appearance under a summons which he issued for plaintiff's appearance before a justice of the peace of the county, to answer the charge of hunting on a resident license, and illegal possession of deer meat.

Plaintiff, on April 26, 1951, filed his complaint for actual and exemplary damages in two causes of action, alleging the above-mentioned acts of defendant under authority from his superiors as being malicious, unlawful

and tortious and in wanton and reckless disregard of the rights of plaintiff.

To this complaint, defendants, appearing by representatives of the Attorney General, filed an answer denying that plaintiff was lawfully possessed of a deer; denying that he held a license issued to him; denying that plaintiff was damaged; and further, denying that they entered the home of plaintiff; but affirmatively averring that plaintiff was a non-naturalized, foreign-born person residing in the State of Colorado for more than ninety consecutive days prior to his application for a game license; that the game killed by plaintiff and taken from his possession was illegally killed by plaintiff and illegally possessed, because the game license issued to plaintiff was null and void and completely ineffectual, as no valid game license could have been issued to him.

After taking the deposition of plaintiff and his wife and defendants Hart and Forgett on January 11, 1952, defendants filed their motion for summary judgment on January 14, 1952, which was argued by defendants' counsel on the theory that the complaint did not state a cause of action upon which relief could be granted for the reason that an alien is not entitled to hunt, shoot or possess big game, and is not entitled to the issuance of a license for such purpose.

The trial court, apparently being misled by the argument of the Assistant Attorney General, on the 11th day of March, entered its order and judgment, in which it was stated "that plaintiff was unlawfully in possession of a hunting license for that year; that an alien is not entitled to hunt, shoot or possess big game; and that the motion for summary judgment should be sustained and this case dismissed."

We are somewhat abashed at the position now taken by the Attorney General's department when in their brief they say, "The State's sole objection to plaintiff's conduct was, and is, that instead of obtaining a nonresident deer hunting license as required by statute, he ob-

tained a resident deer license for $7.50 and killed one of the state's deer under this resident license." The position disclosed by the allegations of the answer, and that urged upon the trial court, was that an alien is not entitled to hold any type of game license, and, as above set out, this position was sustained and followed almost to the letter by the trial court. The inconsistency of the present position is that plaintiff could not rightfully obtain a nonresident license because he had been a resident of the state for five years, as shown in his application.

The representative of the Attorney General's office, in his summary of argument, referring to the matter of the summons that was served on plaintiff, as above outlined, to appear in the justice court, states, "Having lost the decision in that court, the plaintiff filed an action in the District Court sounding in damages." On page 15, he states, "With the conviction in the justice court unreversed, this plaintiff stands in fear of having his application for citizenship denied and his return to Switzerland ordered because of his own unlawful act in killing this deer without a proper license. In order to obviate this danger, real or phantom, he has willingly brought this damage action against these defendants on trumped up charges, which he himself knows and admits to be untrue in every respect."

The record before us contains no intimation of the disposition of the case in the justice court. If there was a conviction, and if it was to be used as an argument against plaintiff here, such record could easily have been obtained as a supplement to the record as we have it. It does appear in the reply brief of plaintiff that the statements about the justice court case, made as above referred to, are wholly without foundation, because counsel for plaintiff states, "Plaintiff was not only never convicted in any court, but also was never tried in any court at any time for possession of any game of whatever description." The following appears on pages 15 and 16 of defendant Hart's deposition: "Q. Do you recall, Mr.

Hart, a telephone conversation I had with you subsequent to October 23, 1950, in which I advised you that there had been a subsequent act passed since the statute of which you spoke? A. I forget the exact date that you called me and mentioned that in your opinion a 1939 law, I believe, in your opinion— Q. At that time did I make any request upon you to have the proceedings, which were filed against Mr. Herzig, dismissed? A. Yes. You made that solicitation in several telephone calls, yes, sir. Q. Did you take any steps to procure dismissal of the proceedings? A. No. I consulted with counsel following each of your telephone calls. Q. To your knowledge, do those steps still remain active in Mr. Sawyer's court, Justice of the Peace, in Jefferson County? A. It is my understanding that Forgett and Carlson, in consulting with District Attorney Hackethal, on the District Attorney's advice no one even appeared in Sawyer's court, and that the case was to be filed directly in a court of record, is my understanding of it, Mr. Robinson." We therefore are justified in assuming that the case in the justice court is still pending, or has been disposed of for want of prosecution; at least, there is no conviction there which stands unreversed, as above stated.

■ Anything appearing in our statutes prior to 1939, particularily section 176, chapter 73, '35 C.S.A., concerning the prohibition of aliens possessing guns and killing game has not been effectual since the passage of the 1939 Act, chapter 109 S. L. '39, being an Act relating to game and fish, etc., and repealing or amending all Acts or part of Acts in conflict therewith. This Act is entirely silent as to any prohibition against an alien and clearly does permit aliens to procure and use a big game license under the following, which is section 7, chapter 109, S. L. '39, p. 396: "Within the meaning of this act, and within the meaning of any other act or acts relating to game and fish, the term 'resident,' when used as a qualification of an applicant for the issuance of any game or fish license, or hunting or fishing license, or hunting or fishing pri-

vilege, shall mean a person who has resident and domiciled regularly, and maintaining a fixed and permanent abode within the state of Colorado, for a period of not less than ninety (90) days immediately preceding the date of application for any such license. All other persons not so qualified shall be, and hereby are declared 'non-resident.' "

■ This section can be given no other meaning than that "a person who has resided and domiciled regularly, and maintaining a fixed and permanent abode within the state of Colorado, for a period of not less than ninety (90) days immediately preceding the date of application for any such license" may, under such qualifications, obtain a license. It is not restricted to citizens, but is confined to a distinction between residents of the State of Colorado and nonresidents of Colorado, to provide a difference in the amount of the license fee.

It is undisputed and admitted that plaintiff was a resident for more than five years prior to the incident involved, in fact, had been married for nine years and his wife a natural-born citizen. It further appears that he did hunt and kill a deer the year previous, and it can be assumed that he had a license at that time. When defendant's representatives appeared on plaintiff's premises and plaintiff gave them his license, which they took with them, and which, on its face, disclosed that plaintiff had not practiced any deceit or concealment concerning his citizenship in obtaining the license, and the license being regularly issued by an authorized agent of the department, the officers or agents should thereby have been placed on sufficient inquiry as to have not disturbed plaintiff in the possession of the deer or intimated his arrest unless he signed a consent to appear in the justice court, until they could have determined the validity of the license. In fact, the summons issued was not to answer a charge of hunting as an alien, but "hunting on a resident license, illegal possession of deer meat."

Such officers should be fully informed as to all re-

quirements concerning the obtaining of hunting licenses, to the end that they do not take drastic action, as here employed, when plaintiff was in possession of the deer which he had killed under a licensed and clear legal right. The license was regularly and properly issued according to the provisions of the statute, and plaintiff exercised his clear, legal right thereunder.

██ It follows that the trial court, at the behest of the attorneys representing defendants, erred in holding that plaintiff, as an alien, could not hunt in the State of Colorado, even though in possession of a perfectly valid license to do so; and further, in sustaining the motion for summary judgment and dismissing plaintiff's complaint. Cases cited in all briefs are not applicable and therefore are not of any persuasive value.

The judgment is reversed and the cause remanded with directions to reinstate plaintiff's complaint and for such further procedure as may be advised.

MR. CHIEF JUSTICE STONE and MR. JUSTICE CLARK concur in the result.