No. 17,414.

JOHN D. HART, ET AL. *v.* R. A. HERZIG.
(283 P. [2d] 177)

Decided May 2, 1955.

Mr. DUKE W. DUNBAR, Attorney General, Mr. FRANK A. WACHOB, Deputy Attorney General, Mr. ROBERT F. CARR, Assistant Attorney General, Mr. JOHN F. MUELLER, Mr. WILLIAM P. HORAN, for plaintiffs in error.

Mr. GEORGE J. ROBINSON, Mr. RAY A. CURRAN, for defendant in error.

*En Banc.*

MR. JUSTICE LINDSLEY delivered the opinion of the Court.

THE parties appear in this Court in reverse order of their appearance in the trial court, and we shall refer to them as they there appeared.

Plaintiff filed an action against defendants consisting of two claims. In the first claim he alleged that defendants Cleland L. Feast, John D. Hart and William J. Forgett were duly appointed, qualified, acting director, assistant director and state officers of the Game and Fish Department of the State of Colorado, and that on October 23, 1950, they wrongfully and tortiously converted a deer which they had seized from plaintiff, and for this conversion plaintiff sought judgment against defendants, and each of them, in the sum of $500.00 actual damages and $500.00 exemplary damages.

In his second claim plaintiff alleged that defendants wrongfully and tortiously arrested plaintiff, and for this false arrest plaintiff claimed damages against defendants, and each of them, in the amount of $2,500.00 actual, and $1,500.00 exemplary, damages.

Defendants in their answer, for a first defense state that this is an action against the State of Colorado and that plaintiff failed to exhaust his administrative remedy prior to instituting the action. In their second defense they re-allege the failure of plaintiff to exhaust administrative remedies, and in their third defense they deny the allegations of conversion and false arrest.

As an affirmative defense they alleged in their fourth defense that plaintiff was an unnaturalized foreign born person, an alien, residing in the State of Colorado, and that the deer in question was illegally killed by him and illegally in his possession because it was obtained under a purported game license issued to him, which was null and void.

The deposition of plaintiff was taken, wherein he admitted that he was an alien, and he also stated that he had resided in the State of Colorado for a period of five years. Upon this admission and statement, in a hearing on motion for summary judgment as to the fourth defense, the trial court found plaintiff was an alien and hence, as such, could not lawfully hunt in the State of Colorado; that he was in unlawful possession of a hunting license, and the deer, the conversion of which complaint is made in this cause. A review was had in this Court upon this ruling and entry of summary judgment for defendants. The Court in *Herzig v. Feast*, 127 Colo. 564, 259 P. (2d) 288, held that plaintiff, even though an alien, was in possession of a valid hunting license and entitled to hunt in the State of Colorado; reversed the action of the trial court; and at page 570 supra, entered orders "to reinstate plaintiff's complaint and for such further procedure as may be advised."

The case was then tried before a jury and the evidence disclosed that defendant Hart was assistant director of the State of Colorado Department of Game and Fish; that defendant Hart and plaintiff were neighbors; that defendant Hart was aware of the fact that plaintiff was an alien; that Hart had been informed by his wife (Mrs. Hart) that

plaintiff had obtained a hunting license. The evidence further disclosed that defendant Hart requested the Idaho Springs station to check aliens who were hunting big game as the Department of Game and Fish had been informed by its legal advisor, the attorney general's office, that such action was illegal. The Idaho Springs reports showed plaintiff Herzig had checked through its station upon return from a hunting trip to the western slope with the deer in question, and defendant Hart became aware of it in reviewing these reports the next morning, October 23, 1950.

Defendant Hart told defendant Forgett and Mr. Carlson, who also was an employee of the Game and Fish Department, as appears at folio 283 of the record:

"Fellows, I think my neighbor, Mr. Herzig, 1560 Ames, I don't know whether he has gone hunting or not. It looks like he has. Won't you go by there and find out? I said, "He might not even be at home because I know he has to work for a living. Knock at the door and find out if he is home. You probably can and will find out if he isn't at home from whoever answers the door and go on your way. That was, well, that was the extent."

Thereupon defendant Forgett and Mr. Carlson went to plaintiff's residence. They were met by plaintiff's wife who told them plaintiff was in the garage. While walking towards the garage plaintiff came towards them and they explained their mission; told him it was necessary to seize the deer, tag it and place it in storage as plaintiff had been illegally hunting and was in illegal possession of the deer. They then made out a summons for plaintiff to appear in the justice court of the county of plaintiff's residence. Defendant Forgett stated he told plaintiff he was not under arrest, but that the summons was a courtesy one and he would pick a date convenient to Herzig to appear in justice court, to which plaintiff assented. Plaintiff Herzig in his testimony stated defendant Forgett told him he was under arrest.

Forgett and Carlson then left and Herzig testified he

became quite upset and alarmed because he was fearful that an arrest might adversely affect his chances of becoming a naturalized citizen. He testified that he didn't sleep well and didn't eat well that day; that he sought the advice of a neighbor who told him to consult a lawyer, and on the following day he consulted Mr. Robinson, an attorney; that Mr. Robinson told him not to worry and thereupon he ceased worrying, and upon counsel's advice he did not appear in justice court, and the record is silent as to the disposition of the case in that court. The evidence further disclosed that defendant Hart, upon demand to return the deer, refused.

At the conclusion of evidence, by agreement, the action was dismissed as to Cleland L. Feast and plaintiff withdrew his prayer for exemplary damages against defendant Forgett.

The trial court held that defendant Forgett was guilty as a matter of law of conversion and also of false arrest, and instructed the jury to that effect. The court submitted two forms of verdicts to the jury, which provided for the assessment of damages on the conversion and on the false arrest in favor of plaintiff and against defendant Forgett. The court stated in Instruction No. 4:

"You are instructed that all persons who command, instigate, promote, encourage, advise, countenance, co-operate in, aid, or abet the commission of wrongfully taking, seizing the property of another, or of an unlawful arrest are wrongdoers with the person committing the same and are liable as principals to the same extent and in the same manner as if they had performed the wrongful act or acts themselves. * * *"

The purpose of this instruction was to allow the jury to pass upon whether or not the conduct of the defendant Hart made him a joint tortfeasor.

The court also gave separate verdicts as to defendant John D. Hart for the jury to pass upon the amount of actual damages and exemplary damages on the first claim for conversion of the deer, and separate verdicts for plain-

tiff and against defendant Hart for assessment of actual and exemplary damages for the false arrest.

In each of the verdicts the jury assessed damages at the full amount prayed for, with the exception of finding as to the value of the deer; i.e., a verdict against defendant Forgett for $320.50 actual damages for the conversion of the deer, upon plaintiff's first claim, and against defendant Forgett in the amount of $2,500.00 actual damages for false arrest upon plaintiff's second claim, and against defendant Hart for $320.50 actual damages and $500.00 exemplary damages upon the first claim and against defendant Hart for $2,500.00 actual damages and $1,500.00 exemplary damages upon plaintiff's second claim.

It thus will be seen that an act of conversion by joint tortfeasors was alleged in the first claim of plaintiff's complaint and an act of wrongful arrest by joint tortfeasors was alleged in the second claim of plaintiff's complaint; that the court's Instruction No. 4 referred to joint tortious conduct, and instead of a joint verdict on each of the claims, individual verdicts against individual defendants were given to the jury on each claim. Upon these individual verdicts the court entered individual judgments in accordance therewith.

Seasonably, motions to set aside the verdicts and for a new trial were filed, and upon denial the case is here for review upon writ of error.

Plaintiffs in error, among other things, contend that the court committed error in holding that as a matter of law there was a false arrest, as alleged in the second claim, and also that error was committed in denying defendants' motion for a directed verdict as to the second claim. With this contention we agree.

■ All that defendant Forgett did was to make out a summons for the plaintiff to appear in Justice Court, and whether or not the defendant Forgett told the plaintiff he was under arrest, which is disputed in the evidence, these facts in themselves were not such an interference with plaintiff's liberty, or such a restraint upon his voluntary

action and conduct, as to constitute an unlawful restraint of plaintiff, and further the evidence disclosed that plaintiff did not respond to the summons in any way.

■ The violation of the Game and Fish laws claimed by defendants was a misdemeanor and the proper manner of instituting a suit in the justice court is upon complaint being made as required by law, the issuance of a warrant for the arrest of the party so charged and upon his arrest to bring him before the Justice for trial. Section 158, chapter 96, '35 C.S.A.; C.R.S. '53, 79-15-3.

We held in *Solt v. People*, 130 Colo. 1, 272 P. (2d) 638, that there was no criminal action properly pending in the justice court by virtue of a summons served by a patrolman, and a motorist's agreement to comply therewith, where the motor-vehicle laws required a notice instead of a summons as provided in section 291, chapter 16, '35 C.S.A., as amended in section 3, chapter 74, page 224 Session Laws of Colorado 1939; C.R.S. '53, 13-4-137.

■■ The question then is raised: Does the service of the summons without legal efficacy and the assent of the plaintiff to appear in justice court constitute an arrest? Our answer is, no.

In *Berry v. Bass*, 157 La. 82 (102 So. 76), under a similar set of circumstances, the court, in holding that there was no arrest, said at page 86:

"Now, we are quite ready to admit that the *actual use of force* is not necessary to constitute an arrest; but the intention to arrest, i.e., to take into custody, must be there, and must be evidenced by some unequivocal act, as by keeping the arrested party in sight and controlling his actions. * * * On the contrary, the very purpose of merely notifying a person charged with some offense simply to appear before a magistrate is precisely *to avoid arresting* him therefor; it is precisely *not* to deprive him of his liberty for the time being; it is for the very purpose of leaving him master of his own movements until the time fixed. And the person so notified or summoned is no more under arrest than a *witness* summoned or notified to appear

before a magistrate on a given day. Nor is the fact that he is told to 'consider himself under arrest' any more potent to make him be under arrest, than his being told to consider himself an emperor's son to make him a crown prince.

"And whether or not such notice or summons be complied with, and, if so, whether such compliance be or be not because of fear of the consequences, whatever those may be, should he fail to comply, is wholly beyond the present question; since the fact remains that such person is *not* under arrest for the time being, but is master of his own movements." Citing cases. See, also, *People v. Yerman*, 246 N.Y.S. 665.

■ The judgment must be reversed for an additional reason. It is apparent from the record that in the commission of each of the torts complained of the charge was that defendants jointly committed such torts and the evidence submitted by plaintiff tended to establish joint commission of said torts, and therefore the submission of individual verdicts, the fixing of individual liability upon each of the defendants in each tort complained of, and the judgment thereon, was error.

We have recently held in *Miller v. Singer*, 131 Colo. 112, 279 P. (2d) 846:

"So far as we have discovered from a rather exhaustive study of the question, it is a universally accepted principle of law that all those who actively participate in any manner in the commission of a tort are jointly and severally liable therefor, and that the tort being integral and indivisable, either or any, or all of the joint tortfeasors may be held liable for the whole of the damages resulting from their tortious act. Where an action is brought against joint tortfeasors, if, as here, the finding is against all of them, the verdict must be a single verdict against all for a single sum and not a several verdict against each defendant either for the same or separate sums. *Mason v. Sieglitz*, 22 Colo. 320, 44 Pac. 588; *Bartlett v. Hammond*, 76 Colo. 171, 230 Pac. 109; *Meek v. Smith*, 59 Colo. 461,

466

149 Pac. 627; *Reyher v. Mayne,* 90 Colo. 586, 10 P. (2d) 1109; * * *"

■  The question then remains as to the validity of the judgment for exemplary damages based upon the verdicts rendered against defendant Hart. We have just ruled that the verdicts for actual damages must be set aside, and it likewise logically follows that the verdicts for exemplary damages also must be set aside because we recently said in *Ress v. Rediess,* 130 Colo. 572, 278 P. (2d) 183, at page 186:

"We are inclined to the view that when the judgment for actual damages was extinguished, the basis upon which exemplary damage could rest likewise was extinguished. In other words, if there is no actual damage remaining, exemplary damage will not lie. Our Court has consistently held that there must be some relation between actual damages and exemplary damages."

Therefore it is obvious that the judgment upon the verdicts must be set aside and new trial ordered because of error appearing in the record, and under authority of Rule 111 (f) R.C.P. providing " * * * the court may in its discretion notice any error appearing of record," we deem it proper to take notice of the above error.

For the above reasons the judgment is reversed and the cause remanded with instructions to grant a new trial as to the plaintiff's first claim, and to dismiss plaintiff's second claim.